# JANUARY, 1914.

---

### EX PARTE CHARLES FRANCIS.

#### No. 2744.   Decided January 4, 1914.

#### Rehearing denied February 11, 1914.

**1.—Habeas Corpus—Pool Room—Constitutional Law.**

The Legislature can enact a law which is to become effective in any given territory of the State in the future upon the result of an election therein authorized to be held, without specific authority to do so in the Constitution, and the Act of the Thirty-third Legislature, chapter 74, authorizing an election to be held to prohibit pool rooms and billiard halls is constitutional. Distinguishing Swisher v. State, 17 Texas, 441; Ex parte Farnsworth, 61 Texas Crim. Rep., 343, and other cases. Following Stanfield v. State, 83 Texas, 317; Johnson v. Martin, 75 Texas, 33; San Antonio v. Jones, 28 Texas, 32, and other cases. Davidson, Judge, dissenting.

**2.—Same—Analogous Legislation—Local Option.**

There are a number of laws on the statute books of Texas in which it is left to the option of the people to be affected to decide whether or not they will accept the benefits of the laws; notably, the provisions authorizing cities and towns to incorporate, etc.

**3.—Same—Rule of Construction—Constitutional Law.**

All power not delegated to the Federal Government is reserved to the States, and this power is inherent in the people of the State in the absence of an inhibition in the State Constitution.

**4.—Same—Repudiated Doctrine—Rule Abandoned.**

The doctrine that the law, to be a complete enactment, must go into effect at once and not be made to depend upon any future contingency, and must not be determined by an election provided for in the law, although once the rule, has since been abandoned.

**5.—Same—Rule Stated—Election—Local Option.**

It was the law that authorized the vote to be taken, and when taken the law, and not the vote declaring the result that should follow the law; the vote

was the means provided to ascertain the will of the people, not as to the passage of the law, but whether the thing provided in the law should be prohibited in their midst; the vote sprang from the law, and not the law from the vote.

### 6.—Same—Rule Stated—Weight of Authority.

The great weight of authority in the United States is that laws may be absolutely dependent upon no contingency, or they may be subject to such conditions as the Legislature in its wisdom may impose, and they are none the less perfect and complete when passed by the Legislature, though future and contingent events may determine whether or not they shall operate in certain territory.

### 7.—Same—Rule Stated—Electors—Local Option.

The Legislature may confer a power without desiring to enforce its exercise and leave the question whether it shall be assumed to be determined by the electors of a particular district, and either command or permit, and in either case, its acts have the efficiency of laws.

### 8.—Same—Rule Stated—Delegation of Power—Distinction—Discretion.

The true distinction is between the delegation of power to make a law, which necessarily involves a discretion as to what the law should be, and conferring authority or discretion as to its acceptance and execution to be exercised under and in pursuance of the law, and under this rule, the pool room law is as complete an enactment as the local option law, and there being no constitutional inhibition, is equally as valid. Davidson, Judge, dissenting.

### 9.—Same—Sovereignty of the People—Rule of Construction.

Under our Constitution and form of government sovereignty abides in the people, and from this source all authority must in its incipiency flow, and the Legislature is the direct representative of sovereignty in the enactment of laws and declaring the policy of the State, and the courts will not declare the same unconstitutional unless its nullity and invalidity are placed beyond a reasonable doubt.

### 10.—Same—Rule of Construction—Presumption.

No rule of construction is better established, both on principle and authority, than that Acts of the Legislature are presumed to be constitutional until the contrary is clearly shown, and there being no provision in the Constitution inhibiting the Legislature from passing the Act of the Thirty-third Legislature, chapter 74, providing for the election prohibiting pool rooms and billiard halls in certain territory, the same is valid and constitutional. Davidson, Judge, dissenting.

### 11.—Same—Delegation of Legislative Authority—Public Policy.

It is now held by all the recognized authorities that to pass a law to take effect in the future upon the happening of a contingency or event is not a delegation of legislative power or authority, and one of those contingent events may be the result of an election to determine whether or not it shall be accepted and its terms enforced in territory in which the Legislature in the law or Act authorized the election to be held, and the courts have nothing to do with the legislative policy.

### 12.—Same—Delegation of Legislative Power—Suspension of Law.

The pool hall statute passed by the Thirty-third Legislature is not unconstitutional and void on the ground that it involves a delegation of power by the Legislature to the votes in counties and subdivisions thereof to suspend a law of the State or to make laws, because it does neither of these things.

### 13.—Same—Rule Stated—Contingency—Legislative Will.

The Legislature having itself declared what the law shall be when it takes effect, and also upon what contingency it shall take effect, and when that con-

tingency happens, it takes effect by force of the legislative will and is in no sense a delegation of legislative power. Davidson, Judge, dissenting.

### 14.—Same—Fourteenth Amendment—Bill of Rights.

The Act of the Thirty-third Legislature, known as the pool hall statute, is not repugnant to the Fourteenth Amendment to the Constitution of the United States, or section 19 of the Bill of Rights of Texas, as such law applies within the territory where it is adopted without discrimination in favor of or against all persons within such territory, and deprives no person of any property.

### 15.—Same—Law not Ambiguous or Indefinite.

The Act of the Thirty-third Legislature, chapter 74, known as the pool hall statute, is not void on the ground that it is vague, ambiguous and indefinite, as a mere reference to the Act shows the contrary.

### 16.—Same—Police Regulation—Local Option—Legislative Power.

This court has arrived at the definite conclusion that in matters of local concern and in matters of what is termed police regulation, the Legislature of Texas has the authority and power to enact a general law applicable to the whole State, its operation in different localities to be dependent upon the will of the people thereof as their needs and necessities may require. Following Stanfield v. State, 83 Texas, 317. Davidson, Judge, dissenting.

### 17.—Same—Stare Decisis—Judicial Precedent.

If this court had a clear and definite rule of decision on this question it would follow this rule, although the doctrine of stare decisis has but little weight when no property rights are involved, and the only issue involved is the policy of the State, and where a former decision of the Supreme Court, if not overruled by said court, is at least so distinguished and limited that but little is left of it, this court must look to the great body of the law as written and now understood and promulgated by the great law writers of the day, discussing Swisher v. State, supra. Davidson, Judge, dissenting.

### 18.—Same—Cases Discussed and Reviewed.

See opinion of court on motion for rehearing discussing and reviewing the decisions of the Supreme Court, Court of Civil Appeals and Court of Criminal Appeals.

### 19.—Same—Different Acts of the Legislature—Taxing Occupation.

Section 8 of article 7355, Revised Civil Statutes, levying a tax on the occupation of pool and billiard tables is not in conflict with chapter 74 of the Act of the Thirty-third Legislature prohibiting pool rooms and billiard halls by an election held thereunder, but the prior statute is only modified by the later Act to the extent that the pool hall occupation tax is applicable to the territory only in which the pool halls have not been prohibited by an acceptance of the provisions of the later Act.

### 20.—Same—Permissive Statutes—Suspension of State Law.

The contention that the Act of the Thirty-third Legislature, known as the pool hall statute, is a permissive statute and when accepted, if it is thereafter decided by a vote to no longer accept the provisions of it, as the Act authorizes, that this would be a suspension of a State law, is untenable, as clearly appears by a reference to other permissive statutes in the Revised Civil Code.

### 21.—Same—Judicial Construction—Supreme Court.

In every decision rendered by the Supreme Court of Texas since the opinion in the case of Swisher v. State, 17 Texas, 441, was rendered, that part of it which held that the Act then under consideration was a delegation of legislative power to enact law has not been followed, but the exact contrary has been held in every case that has come before the Supreme Court. Davidson, Judge, dissenting.

**22.—Same—Judicial Construction—Court Criminal Appeals.**

This court adopted the rule announced by the Supreme Court of Texas, which holds that legislation of the character that gives to the voters the permissive right to accept or reject the provisions of the law as is done in the instant case is not unconstitutional. Following Ex parte Moto, 19 Texas Crim. App., 112, and other cases.

**23.—Same—Rule Stated—Police Power.**

While the Constitution of Texas commands the Legislature to enact this character of law in regard to intoxicating liquors, yet Texas is about the only State in the Union having such a provision in its Constitution, and yet these laws have been uniformly upheld, and if it may thus be applied to intoxicating liquors because subject to the police power, it may be applied to any other subject or thing that is subject to regulation and control under the police power of the State, and not inhibited by the Constitution. Overruling Ex parte Massey, 49 Texas Crim. Rep., 60. Davidson, Judge, dissenting.

From Wilbarger County.

Original habeas corpus proceeding asking release of relator under a capias issued out of the County Court charging him with violating the Pool and Billiard Local Option Law.

The opinion states the case.

*Lightfoot, Brady & Robertson*, for relator.—The said pool hall statute, passed by the Thirty-third Legislature of Texas, is unconstitutional and void, because it involves a delegation by the Legislature, to the voters in counties and subdivisions thereof, of the power to suspend laws of the State, and also a delegation of the power to make laws. Constitution, art. 1, sec. 28; Constitution, art. 2, sec. 1; Constitution, art. 3, sec. 1; State v. Swisher, 17 Texas, 441; Willis v. Owen, 43 Texas, 41; Ex parte Farnsworth, 61 Texas Crim. Rep., 353, 135 S. W. Rep., 538; Jannin v. State, 42 Crim. Rep., 631; T. & P. Ry. Co. v. Mahaffey, 98 Texas, 392; McDonald v. Denton, 132 S. W. Rep., 823; Werner v. City of Galveston, 72 Texas, 22; Ex parte Massey, 49 Texas Crim. Rep., 60; Coombs v. State, 38 Texas Crim. Rep., 648; Burton v. Dupree, 46 S. W. Rep., 272; Brown Cracker Co. v. City of Dallas, 104 Texas, 290, 137 S. W. Rep., 342; Cooley's Constitutional Limitations; Cases cited in Harris's Constitution, under art. 1, sec. 28; Ex parte Wall (Cal.), 17 Am. Rep., 425; State v. Weir, 33 Iowa, 134; 11 Am. Rep., 115; Barto v. Himrod (N. Y.), 59 Am. Dec., 506; Parker v. Commonwealth (Pa.), 47 Am. Dec., 480; Lammert v. Lidwell (Me.), 21 Am. Rep., 411; Wright v. Cunningham (Tenn.), 91 S. W., 293; Bradshaw v. Lankford (Md.), 11 L. R. A., 582; In re Municipal Suff. to Women (Mass.), 23 L. R. A., 113; People v. Bennett (Mich.), 18 Am. Rep., 107.

Seemingly contra: Johnson v. Martin, 75 Texas, 33; Stanfield v. State, 83 Texas, 317; City of San Antonio v. Jones, 28 Texas, 19.

On question of delegation of legislative authority to suspend laws: Brown Cracker Co. v. City of Dallas, 104 Texas, 290, 137 S. W. Rep., 342; Ex parte Ogden, 43 Texas Crim. Rep., 531; Arrozo v. State, 69 S. W. Rep., 503, and cases cited in opinion.

On question of law being too vague and indefinite: Ex parte Bell, 32 Texas Crim. Rep., 308; M. K. & T. Ry. Co. v. State, 100 Texas, 420; Chicago Burlington, etc., Ry. Co. v. Chicago, 166 U. S., 226.

C. E. Lane, Assistant Attorney-General, for the State.

HARPER, JUDGE.—A complaint was filed against relator charging that he run a pool room and billiard hall in justice precinct No. 1 of Wilbarger County, Texas, after an election had been legally held and pool rooms and billiard halls prohibited under the provisions of chapter 74 of the Acts of the Thirty-third Legislature. When arrested he sued out a writ of habeas corpus before this court, which was granted and the cause set for hearing on October 8. On that day the cause was ably argued by counsel, and very interesting and thorough briefs have been filed with the papers.

On account of the importance of the questions involved, we have given much study and thought to the propositions involved in the case. The principal question involved in the case is, can the Legislature enact a law which is to become effective in any given territory in the future upon the result of an election therein authorized to be held? The pool room law as enacted is what in legal phraseology is termed a "local option law," and the question to be decided is, can the Legislature enact this character of legislation where there is no specific authority to do so found in the Constitution? The Constitution specifically commands local option laws to be passed in regard to prohibiting the sale of intoxicating liquors, to prohibit stock from running at large, and in some other instances, but there is no command in that instrument requiring the Legislature to enact a local option law in regard to pool rooms and billiard halls, and it is contended that as there is no specific authority granted in that instrument to pass that character of law as regards pool rooms and billiard halls, then no such authority exists in the Legislature to do so.

This is a question about which much has been written, and the decisions of many States are in conflict, and the decisions of our own State are far from satisfactory. Relator cites us to the cases of Swisher v. State, 17 Texas, 441, and Ex parte Farnsworth, 61 Texas Crim. Rep., 343, 135 S. W. Rep., 535 and 538, as holding that the Legislature is without authority to enact this character of legislation in the absence of express authority so to do being found in the Constitution. We do not think the Farnsworth case, supra, is in point, because the question involved in that case is not the same question here presented. While it may be said to be true that some expressions used in that case would seemingly sustain his contention, yet when the case is analyzed it is found that the questions there presented are not involved in this case. In the Swisher case, supra, however, if we take the language there used in its broadest sense, it would support relator's contention. In the Swisher case, supra (decided in 1856), the Legislature had enacted a

law authorizing an election to be held in each county in Texas to determine whether or not the sale of intoxicating liquors should be permitted or prohibited in such county. Swisher was indicted for retailing liquors, without paying the tax levied under prior laws, and he plead the Act in question in bar of such prosecution. His plea was sustained by the trial court, and the court holds that the trial court was in error in so holding, but on account of defective record the appeal was dismissed, and it was unnecessary to pass on any other question. However, in writing the opinion Judge Lipscomb uses the following language: "The question presented is not now of very general interest, as the act, whether constitutional or not, has been repealed. We shall not, therefore, give to it the elaborate investigation that we would otherwise have felt called on to bestow on it." . . .

"The mode in which the Acts of the Legislature are to become laws is distinctly pointed out by our Constitution. After an Act has passed both houses of the Legislature, it must be signed by the Speaker of the House and the President of the Senate. It must then receive the approval of the Governor. It is then a law. But should the Governor veto it and send it back, it can only become law by being passed again by both houses, by a constitutional majority. There is no authority for asking the approval of the voters at the primary elections in the different counties. It only requires the votes of their representatives in a legislative capacity.

"But, besides the fact that the Constitution does not provide for such reference to the voters to give validity to the Acts of the Legislature, we regard it as repugnant to the principles of the representative government formed by our Constitution. Under our Constitution, the principle of law-making is, that laws are made by the people, not directly, but by and through their chosen representatives. By the Act under consideration, this principle is subverted, and the law is proposed to be made at last by the popular vote of the people, leading inevitably to what was intended to be avoided, confusion and great popular excitement in the enactment of laws."

It is thus seen that a decision of the question involved in this case was not necessary to a disposition of the case, and as stated by the learned judge who wrote it, he did not give the question that investigation he would otherwise have felt called upon to give it, and this opinion would be what is termed but obiter dictum. However, had this rule of decision been followed by our Supreme Court, we would feel in a great measure bound by it, but in no instance since its rendition, has the Supreme Court adhered to what is therein stated to be the law, if we take the words used in their broadest sense. The opinion correctly states that this is a representative form of government, and that, while the laws are made by the people, yet they are enacted by and through their chosen representatives. To this principle or rule of law we do not think there has ever been or can ever be any dissent. The fallacy in the opinion, if fallacy there be, is in improperly stating the premises, and in doing so,

the conclusion drawn therefrom would necessarily be erroneous. The opinion is based on the proposition that the law as it left the hands of the Legislature was not a complete enactment—was not a law, but other steps were necessary to be taken before the Act became the law of the land. This is the incorrect premise. The Act as passed by the Legislature was a completed enactment. The law, it is true, may be said to have adopted what is termed the "local option system" in a certain matter of police regulation. The act of accepting or rejecting it in any given territory forms no part of its enactment as a law; this right to vote on its acceptance in any given territory is derived and flows from the law as passed by the Legislature, and whether or not it is ever accepted by the people of any given county in no manner affects the validity of the law. It would still be the law of the State, and might be taken advantage of at any time if the people of any county saw proper to do so. It is a right given by the law, and so long as the law remains on the statute books the right exists.

As said before, if our Supreme Court, since the rendition of the opinion in the Swisher case, had followed it, we would be inclined to do so, but every time since then when the question involved in that case has been before our Supreme Court, while not in specific terms overruling it, yet it has as effectually done so as it is possible to do so without specifically so stating.

In the case of Stanfield v. State, 83 Texas, 317, this same question again came before the Supreme Court. The Legislature had passed a law creating the office of county superintendent of public instruction, authorizing counties to accept or reject its provisions, and if accepted, if later in the wisdom of the Commissioners Court such action was unwise, the county was given the right to abolish the office and reject the provisions of the law. This was a "local option law," and was sustained by the Supreme Court. The only difference in that law and the pool hall law is that in the county superintendent law the accepting or rejecting of it was left to the Commissioners Court of the various counties, while in the pool hall law the accepting or rejecting of it is left to a vote of the people to be affected by its provisions. If the county superintendent law was a complete enactment, then this law would also be. In passing on the case Judge Henry, speaking for the court, says:

"Our Constitution and statutes each provide for the adoption of laws in particular localities according to and dependent upon the expressed will of the people to be affected, *and such statutes have not in every instance been expressly directed by the Constitution.* It would be tedious and would serve no useful purpose to undertake here to enumerate all instances of such legislation.

"A city containing 1000 inhabitants or over may by vote of its council accept or reject the general incorporation law of this State for cities and towns. The inhabitants of a town or village may by vote accept or reject the incorporation Act provided for them (Rev. Stats., chap. 11, title 17), and having once incorporated, such towns and villages may by

their own vote abolish the corporation including the offices. . . . When the extended area of this State is considered, as well as the diversity of the pursuits of its inhabitants, and the great differences in population and resources of the different counties, it would be unfortunate if the Legislature did not have the power to enable the different counties to adopt or decline some of the agencies of government according to the exigencies of their situation. And such Acts must be very clearly in contravention of the fundamental law before we shall feel ourselves warranted in so declaring them.

"It was the Legislature, and not the county Commissioners Court, that made the law giving to the court the power (to create) and *abolish the office.* The court abolished the office in pursuance of a law of the Legislature, but it can not be said that because it exercised that power under the law it made the law itself."

Again, in the case of Johnson v. Martin, 75 Texas, 33, our Supreme Court had the question of the constitutionality of local option laws before them. In that case the court was passing on the constitutionality of what is known as the cotton weighers law, and the court says:

"It is not contended by the appellees in support of the judgment below that the law would have been unconstitutional if it had been mandatory, that is, if it had commanded the Commissioners Court to order the election, but that the law is unconstitutional because it left the expediency of ordering the election to the discretion of the Commissioners Court, thereby delegating to them the legislative power. The position of the appellees is untenable. The law as it stands was enacted by the Legislature in accordance with constitutional forms, and as a law was complete by the legislative enactment. The Commissioners Court have no power to revise or modify the Act in any respect; they merely have the right to put the law in force by having an election—to organize by calling an election for the officer, who is to execute the law as it came from the hands of the Legislature. It might be said that the law is to take effect upon the happening of a subsequent event—that is, the decision of the Commissioners Court that it is necessary in their respective counties. Such discretion to the council boards of subordinate branches or divisions of the government is not unusual, and is not unconstitutional. It is allowed to them, because in matters of local regulation it may be fairly supposed 'they are more competent to judge of their needs than a central authority.' The Legislature can not merely propose a law to be adopted by the people; but where there is affirmative legislation its enforcement in counties, districts, or towns, when the law so provides, may be left to the option of such localities. It might not be allowed to submit a general law to the people of the State at large to all the electors. This has been held to be in violation of the Constitution, which gives to the Legislature the exclusive right to make laws. See Cool. Cont. Lim., 145-47. But even this was held to be legitimate in some cases. Smith v. City of Jonesville, 26 Wis., 291, and cases there cited. The privilege of the electors of a district to be affected by a law

to say whether they will accept its provisions, the law giving them the right to accept or reject, is now generally permitted, and regarded as constitutional. People v. Stout, 23 Barb., 338; Dome v. Wilcox, 45 Mo., 458; Bank v. Brown, 26 N. Y., 467; Ex parte Wall, 48 Cal., 279; San Antonio v. Jones, 28 Texas, 19.

"In the last above case cited Chief Justice Moore said: 'The Legislature may grant authority as well as give commands, and acts done under its authority are as valid as if done in obedience to its commands. Nor is the statute whose complete execution and application to the subject matter is by its provisions to depend on the assent of some other body, a delegation of legislative power. The discretion goes to the exercise of the power conferred by the law, but not to make the law itself.' "

In both of these cases the Swisher case, reported in 17 Texas and hereinbefore cited, is referred to and while not in terms overruled, yet the court recognized and stated that in the Swisher case the contrary had been held to what they held later in the Stanfield and Johnson v. Martin cases just cited and quoted from, and every case in which our Supreme Court has referred to the Swisher case since its rendition, it has distinguished it and upheld laws containing local option features. We have a number of laws on our statute books that it is left to the option of the people to be affected to decide whether or not they will accept the benefits of the laws, and in no instance since the rendition of the opinion in the Swisher case have such laws been held by our Supreme Court to be unconstitutional. As illustrative of this, we may refer to those provisions of our statutes which authorize a city or town to incorporate and accept the provisions of the chapters relating to cities and towns. In chapter 14, title 22, a town or village containing not less than five hundred inhabitants desiring to accept the provisions of said chapter, twenty residents may file a petition with the county judge, who orders an election at which all qualified voters residing in the territory may vote; if a majority vote in favor of the proposition, the county judge so declares and enters an order of record, when the citizens of the territory become entitled to the benefits of the law. This law, when enacted, was operative in no territory, and became operative only when the people of the territory, by majority vote so decide, as is the case in this pool room law. If the Legislature should say that a village containing five hundred inhabitants could avail themselves of the provisions of chapter 14 by deciding to accept same at an election held to so determine, then they could say where ten people are gathered together they could so decide, if the Legislature had elected to so declare. Again, after cities, towns and villages have accepted by a vote the benefits of the laws relating to those municipalities they are authorized by the law to again vote on the question and relieve themselves from the operation of those provisions of the statute. What more does the pool room law do or say? And after accepting the law relating to cities, towns and villages, the Legislature has provided by law that if they desire to change their form, they may do so and accept in lieu thereof

chapter 15 of title 22—a commission form of government. When this was enacted by the Legislature it became operative in no specific part of the State, but it was a general law and authorized the citizens to petition the mayor, if incorporated, or the county judge if unincorporated, for an election that they might determine for themselves whether or not they would accept the provisions of the law. Other illustrations might be cited, and these laws have all been upheld by our Supreme Court, and they all left it to the option of the people to be affected to say whether or not they would accept the provisions of the law. Many, without thinking, take the wrong view of the State Constitution. It is true that the Federal government is one of delegated power, and to decide whether or not Congress may enact certain character of legislation, we must look to the Federal Constitution, and if authority and power is not therein granted to Congress to do so, then Congress can not legislate on that matter. But this is not true of a State. All power not delegated to the Federal government, was reserved to the State, and this power is inherent in the people of the State. They can act as they deem best for the public good, and while it is true they must act in the way provided by the State Constitution, we look to that instrument not for grant of authority or power, but only to see if the people have placed therein any inhibition in regard to the matter. The people, in the passage or enactment of laws, in the Constitution have provided that their laws must be passed by their representatives—the Legislature— and they have therein specified the particular mode and method necessary to the passage of law, and *a law* can be enacted in no other way. This much we think will be conceded by all. But in the passage of a State law, no other limitation is upon the Legislature than that found in the Constitution, and the scope of a law is not prescribed. This is the fallacy of these decisions that hold what is termed local option laws unconstitutional. They proceed upon the theory that the Constitution has prescribed the scope of the law, and that the law to be a complete enactment must go into effect at once and not be made to depend upon any future contingency. This doctrine or rule, at one time, had some adherents and especially the contention that the future contingency must not be determined by an election provided for in the law. But the few who at first adhered to that rule have in the main long since abandoned it. As said by Mr. Freund in his work on Police Power, page 205:

"The most common form of local power of prohibition is that of local option, which is found in about half of the States of the Union. Legislative provision is made for the expression by vote of the wishes of the people (of the county or of a town), whether licenses are to be granted or not, such vote to be repeated periodically or upon the petition of voters.

"In a number of earlier cases the principle of local option was declared unconstitutional as an undue delegation of legislative power by the Legislature to the people. It is not within the scope of this

treatise to discuss the validity of processes of legislation, but it seems clear that where the local power does not merely consist in the ratification of some legislative measure which has been withdrawn from local control and can be altered only by another exercise of State legislative power, but is continuing so that the people of the district can both adopt and afterwards repeal or adopt at any time—that then the delegation is undistinguishable from the immemorial grant of local powers of government. The validity of local option is now generally recognized; and even in the States in which it was formerly held unconstitutional, the position of the courts has been reversed or materially modified."

It is thus seen that Mr. Freund says in a number of earlier cases such laws were held to be unconstitutional, but the validity of such laws is now generally recognized. As supporting the text that the earlier cases held the law unconstitutional, we find the case of Parker v. Commonwealth, 6 Pa. St., 507, but we find this case overruled by the Supreme Court of Pennsylvania in the case of Locke's Appeal, 72 Pa. St., 491, and the right of a State to enact local option laws in matters of police regulation sustained. In Geebrick v. State, 5 Iowa, 491, a local option law was held unconstitutional, but this opinion was overruled in Witter v. Forkner, 94 Iowa, 1, and the right of a State to enact local option laws sustained. The same may be said of the courts in Indiana. In the case of Maize v. State, 4 Ind., 342, such a law was first held unconstitutional, but that decision was subsequently overruled in the case of Goesch v. State, 42 Ind., 547, and so it may be said of every case cited by Mr. Freund which first held such laws unconstitutional—they have all been overruled by later decisions of their own State.

Mr. Black in his work on Constitutional Law says: "A 'local option' law is a law framed for the purpose of prohibiting, and severely restricting, the sale of intoxicating liquors, and containing a provision that the several counties, townships, or other divisions of the State, may hold elections to determine by popular vote whether they desire the law to be in force in their limits, and with the further provision that in each case where such election results in favor of the adoption of the law, it shall take effect in the district so voting, but that each district rejecting it shall continue to be governed, in this respect, by the existing laws. In some few cases such laws have been ruled unconstitutional, on the ground that they delegated the power of the Legislature. But the very great preponderance of authority is to the effect that such a statute, if it is a complete enactment in itself, requiring nothing further to give it validity, and depending upon the popular vote for nothing but a determination of the territorial limits of its operation, is a valid exercise of the legislative power. Weil v. Calhoun, 25 Fed., 865; State v. Court of Common Pleas, 36 N. J. Law, 72; State v. Pond, 93 Mo., 606, 6 S. W. Rep., 469; Locke's Appeal, 72 Pa. St., 491; Com. v. Dean, 110 Mass., 357; Village of Gloversville v. Howell, 70 N. Y., 287; Anderson v. Com., 13 Bush., 485; Gordon v. State, 46 Ohio St., 607, 23 N. E. Rep., 63."

Sutherland on Statutory Construction is recognized as one of the ablest and most authoritative text-book writers of this day and time, and in his great work beginning on page 170 says:

"It is now settled that laws, at least of local application, may be imperative or permissive; they may authorize the people of cities, villages, townships, counties, groups of counties, or other limited districts not otherwise defined than for the purposes of such acts, to determine for themselves local questions of police, taxation, or any other matter affecting their local welfare; and the law may be conditioned to carry into effect their determination or option. They have thus been authorized to decide by popular vote and execute their decision to contribute for the building for railroads or other public improvements; to establish or remove a county seat; whether there shall be license or prohibition of the liquor traffic; whether paupers shall be a county or a township charge; whether two municipalities shall be united into one; whether they will have a system of free schools; whether a school district shall be established or dissolved; whether a public library shall be established and maintained; whether domestic animals shall be permitted to run at large. The people locally interested may have the option to accept or reject a municipal charter or amendatory acts, or local police law. * * *

"Such cases as Rice v. Foster, Parker v. Commonwealth, Ex parte Wall, and Maize v. State, are now exceptional, and are simply out of harmony with the law as held throughout the country.

"On the whole it may perhaps be considered a sound conclusion, and I think it is supported by preponderance of authority, that whether an act is general or local the Legislature may in their wisdom take into consideration the wishes of the public, and determine not to impose a law on an unwilling or nonconsenting people. Having the power to make their laws conditional to take effect only on the happening of contingent events, what the events shall be on which the taking effect of an act shall depend is not a judicial question, but wholly and absolutely within the discretion of the Legislature, like the emergency which will induce them to make an act take immediate effect, and that the result of a popular vote is a contingent event within that discretion. * * *

"It is common for the Legislature to pass general laws, applicable to the whole State, with a provision that they shall operate only in such localities as shall adopt them by popular vote or otherwise. Such provisions for the operation of the act are valid and do not constitute a delegation of legislative power."

As sustaining this text he cites in addition to the cases above cited Boyd v. Bryant, 35 Ark., 69; In re Petition of Cleveland, 52 N. J. Law, 188; Adams v. Beloit, 105 Wis., 363; Martin v. People, 87 Ill., 524; Shreve v. Cicero, 129 Ill., 226; Caldwell v. Barrett, 73 Ga., 604; Hammond v. Haines, 25 Md., 541; Com. v. Weller, 14 Bush., 218; State v. Cooke, 24 Minn., 247; Fell v. State, 42 Md., 71; Schulherr v. Bordaux, 64 Miss., 59; Com. v. Bennett, 108 Mass., 27; State v. Wilcox,

42 Conn., 364; Barnes v. Supervisors, 51 Miss., 305; State v. Forkner, 94 Iowa, 1; State v. Pond, 93 Mo., 606, and other cases which will be found in the notes to the texts. As some of these cases express it, it was the law that authorized the vote to be taken, and when taken the law, and not the vote declared the result, that should follow the vote. The vote was the means provided to ascertain the will of the people, not as to the passage of the law, but whether the thing provided in the law should be prohibited in their midst. The vote sprang from the law, and not the law from the vote. By their vote the electors declared no consequences, prescribed no penalties, and exercised no legislative functions. The law declared the consequences, and whatever they may be they are exclusively the result of the legislative will.

Mr. Cooley, who is recognized as one of the ablest writers on Constitutional Law of our day, says in his work on Constitutional Limitations:

"One of the settled maxims in constitutional law is, that the power conferred upon the Legislature to make laws can not be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted can not relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust.

"But it is not always essential that a legislative act should be a completed statute which must in any event take effect as law, at the time it leaves the hands of the legislative department. A statute may be conditional, and its taking effect may be made to depend upon some subsequent event. Affirmative legislation may in some cases be adopted, of which the parties interested are at liberty to avail themselves or not at their option. In these cases the legislative act is regarded as complete when it has passed through the constitutional formalities necessary to perfected legislation, notwithstanding its actually going into operation as law may depend upon its subsequent acceptance. * * *

"Such laws are known, in common parlance, as local option laws. They relate to subjects which, like the retailing of intoxicating drinks, or the running at large of cattle in the highways, may be differently regarded in different localities, and they are sustained on what seems to us the impregnable ground, that the subject, though not embraced within the ordinary power of the municipalities to make by-laws and ordinances, is nevertheless within the class of police regulations, in respect to which it is proper that the local judgment should control." He cites as sustaining his text the following cases: Commonwealth v. Bennett, 108 Mass., 27; Commonwealth v. Dean, 110 Mass., 357; Commonwealth v. Fredericks, 119 Mass., 199; Bancroft v. Dumas, 21 Vt., 456; Slinger v. Henneman, 38 Wis., 504; Erlinger v. Boneau, 51 Ill.,

94; Gunnarssohn v. Sterling, 92 Ill., 569; State v. Morris County, 36 N. J., 72, 13 Am. Rep., 422; State v. Circuit Court, 15 Atl., 274 (N. J.); State v. Wilcox, 42 Conn., 364, 19 Am. Rep., 536; Fell v. State, 42 Md., 71, 20 Am. Rep., 83; State v. Cooke, 24 Minn., 247, 31 Am. Rep., 344; Cain v. Commissioners, 86 N. C., 8; Boyd v. Bryant, 35 Ark., 69, 37 Am. Rep., 6; Savage v. Com., 84 Va., 619, 5 S. E. Rep., 565; Caldwell v. Barrett, 73 Ga., 604; Schulherr v. Bordeaux, 64 Miss., 59, 8 So., 201; State v. Pond, 93 Mo., 606, 6 S. W. Rep., 469; Terr v. O'Connor, 5 Dak., 397, 41 N. W. Rep., 746 (Feek v. Bloomingdale, 82 Mich., 393, 47 N. W. Rep., 37, 10 L. R. A., 69). Local option, as applied to the sale of liquors, has also been sustained in Canada. Mayor, etc., v. The Queen, 3 Can. Sup. Ct., 505.

Mr. Joyce, author of standard text-books, including the "Law of Intoxicating Liquors," "Law of Injunctions," etc., on this question, says:

"By local option is meant, in substance, the right of minor political subdivisions of a State to determine for themselves whether the liquor traffic may be carried on within their limits. As in other cases of legislative action in reference thereto, so we find here that, though laws of this character have been the subject of vigorous attack on the ground of their unconstitutionality, yet they have generally been upheld, it being declared that every reasonable intendment is to be resolved in favor of the constitutionality of such a law.

"The objection most frequently raised against these acts is that they operate as a delegation of legislative power. This objection has not, however, met with any favorable consideration from the courts, since it is the action of the Legislature which gives the measure the effect of a law. The vote of the citizens in respect to its adoption is not to be regarded as a legislative act, but simply a determination as to the acceptance of the provisions of that which is already a law. It is the contingency upon which the enactment takes effect.

"Nor are laws to this effect within the inhibition of the constitutional provision as to special, local, or class legislation. Where the act is general in its operation throughout a State, no one subdivision having either greater or less power than another, it is not rendered unconstitutional by the fact that one or more political subdivisions adopt its provisions while others do not." Citing Territory ex rel. McMahon v. O'Connor, 5 Dak., 397; Paul v. Gloucester, 56 N. J. Law, 585, and other cases.

In passing on the question of local option laws, the courts have had before them mainly such laws passed authorizing the prohibition of the liquor traffic. In Texas we have a positive command in the Constitution that the Legislature pass such a law, but it is about the only State in the Union where such a command is found in the Constitution, while in nearly one-half the States laws of that character have been passed and sustained as statutory enactments, notably Missouri, Kentucky, Illinois, Mississippi, Massachusetts, South Dakota, Oregon, Louisiana, Arkansas, Indiana, Ohio, Montana, New Jersey, and many other

States. In none of those States is any express command or authority found in their Constitutions, as in ours. In Pennsylvania, Indiana, Iowa and some of the other States laws of this character were first held to be unconstitutional on the ground that to so provide in the law was a delegation of legislative power, and, of course, if that was a proper construction of the law, then the position would be unassailable. But even in the earlier cases, the courts of a number of States held to the contrary, and promulgated the rule of law that is now recognized as the correct rule of construction, notably Massachusetts, New Hampshire and New Jersey, in the cases of Commonwealth v. Bennett, 108 Mass., 27; Commonwealth v. Dean, 110 Mass., 357; State v. Noyes, 10 Foster, 279; State ex rel. Sanford v. Court of Common Pleas, 36 N. J. L., 72. In these and numerous other cases the substance of what has been held to be the law by the great weight of authority is that laws may be absolutely dependent upon no contingency, or they may be subject to such conditions as the Legislature, in its wisdom, may impose. They may take effect only upon the happening of events which are *in futuro* and uncertain, and among others the voluntary act of the parties upon whom they are designed to operate. They are not the less perfect and complete when passed by the Legislature, though future and contingent events may determine whether or not they shall operate in certain territory. The Legislature may confer a power without desiring to enforce its exercise, and leave the question whether it shall be assumed to be determined by the electors of a particular district. It may command or it may only permit, and in the latter case as in the former its acts have the efficacy of laws. The true distinction is between the delegation of power to make a law, which necessarily involves a discretion as to what the law shall be, and conferring authority or discretion as to its acceptance and execution to be exercised under and in pursuance of the law. What is known as the pool room law is as complete an enactment and law as is the local option intoxicating liquor law—the only difference is that in one instance there is a command in the Constitution that such a law be enacted, while in the other instance the Constitution is silent, but silence on the subject in the Constitution is no inhibition, and to deprive the Legislature of the power to enact this character of law, there must be a positive inhibition. When we were but colonies and part of the English empire, then it was that all power flowed from the King —he was sovereign, and the people had no rights except such as might be granted them by the king, or by Parliament with the consent of the king, and these could be taken away from the people of the realm whenever the king and Parliament so decided and declared. But not so in this country. Our rights do not flow from the president, the governor, or any other governmental agency. Sovereignty abides in the people— there all power is vested, and from this source all authority must in its incipiency flow. While the government was divided into three great departments, the executive, legislative and judicial, yet the power and authority of each has its origin in the sovereigns of the soil—the people

of the State. The power and authority vested or confided in the legislative branch is the broadest and most comprehensive in its scope of either the three. The Legislature is the direct representative of sovereignty in the enactment of laws and declaring the policy of the State. No question of more delicacy or importance ever comes before a court of last resort than one which involves the constitutionality of an Act passed in due form by the legislative department of the government. With the policy of the law, the wisdom, or want of it, in its enactment, we have no concern; that belongs to the domain of the Legislature. Our business is to declare what is the law, and not to make law. When the constitutionality of a law is assailed, before we can assume to declare it void, and thus erase it from the statute books, "Its invalidity must be made plainly to appear." When courts are called upon to pronounce upon the invalidity of an Act of the Legislature, passed with all the forms and ceremonies requisite to give it force, they approach the question with great caution, and never declare a statute void unless, in their judgment, its nullity and invalidity are placed beyond a reasonable doubt. No rule of construction is better established, both on principle and authority, than that Acts of the Legislature are presumed to be constitutional until the contrary is clearly shown. The Legislature is peculiarly under the control of the popular will. It is liable to be changed at short intervals by election. Its errors, therefore, can be quickly cured. The courts are more remote from the people. If we by following our doubts, in the absence of clear convictions, shall abridge the authority of the Legislature, there is no remedy for six years. Thus, to whatever extent this court might err in denying the rightful authority of the Legislature, we would chain that authority for a long period to our feet. It is better and safer, therefore, that the judiciary, if err it must, should not err in that direction. If either department of the government must slightly overstep the limits of its constitutional powers, it should be that one whose official life would soonest end. It has the least motive to usurp power not given, and the people can sooner relieve themselves of its mistake. Herein is a sufficient reason that the courts should never strike down a statute unless its conflict with the Constitution is clear. The judiciary ought to accord to the Legislature as much purity of purpose as it would claim for itself, as honest a desire to obey the Constitution, and also a like capacity to judge of its meaning. We have followed this rule, and expect to continue to do so, and we have read and reread the Constitution of this State, and in no provision thereof do we find where the Legislature is inhibited from passing this character of a law. As held now by all the recognized authorities to pass a law to take effect in future upon the happening of a contingency or event is not a delegation of legislative authority or power, and one of those contingent events may be the result of an election to determine whether or not it shall be accepted and its terms enforced in territory in which the Legislature in the law or Act authorized the election to be held. As to whether this is the best policy for a State to adopt it is not our purpose

to say—that belongs to the legislative branch of the government. But our sole function is to decide whether or not the Legislature is inhibited by the Constitution from the passage of this character of legislation in matters of police regulation, for if there is no inhibition in the Constitution, there can be no question of their authority and power to do so, as the representatives of the sovereignty of the soil.

We have to some extent generalized so far, and we will now take up each proposition submitted by relator why he thinks the law unconstitutional.

The first proposition he submits is: "The pool hall statute passed by the Thirty-third Legislature is unconstitutional and void, because it involves a delegation by the Legislature to the voters in counties and subdivisions thereof of the power to suspend a law of the State, and also a delegation of the power to make laws."

If the Act in question delegated authority and power to suspend a law of the State, or to make a law, of course it would be unconstitutional, but it does neither of these things. As hereinbefore shown, the Act itself is the law of the State, passed by the Legislature, in the manner and form pointed out by the Constitution, and was approved by the Governor. The Legislature is specifically authorized by the Constitution to suspend a law, if this Act can be said to suspend any law of the State (article 1, section 28). And if this pool hall law can be held to suspend any law of this State, then it is the Legislature by statutory enactment doing so. However, we do not think it suspends any law of the State, but it is but the latest expression of legislative will in regard to pool halls, and if in conflict with any other law of the State, it would prevail over other prior enactments. Neither does it delegate power to make a law. The Act is the law itself, and through it certain rights and benefits are conferred. The fact that it goes into effect in given territory upon the happening of a future contingency does not vitiate the law. The law remains the same, and can not be changed, altered nor amended in any manner except by another Act of the legislative body. In his brief relator cites us to the case of Parker v. Commonwealth, 6 Pa. St., 507, but as hereinbefore shown the Supreme Court of Pennsylvania overruled that case in Locke's Appeal, 72 Pa., 491. He also refers us to the case of the State v. Fields, 17 Mo., 529, and other Missouri cases, but all these cases were overruled by the Missouri Supreme Court in the case of State v. Pond, 93 Mo., 606; Ex parte Swainn, 96 Mo., 44; State v. Moore, 107 Mo., 78; State v. Wingfield, 115 Mo., 428. Other cases cited by relator are from Indiana, Iowa, New York, and some other States, but by reference to the later decisions of the courts of final resort in those States it will be found that they are no longer the prevailing rule of decisions even in those States, but the courts in their later decisions have conformed to the great weight of authority, and as said by Sutherland in his work on Statutory Construction (p. 172), "Such cases are now exceptional, and are simply out of harmony with the law as generally held throughout the country,"

the true rule being: The Legislature having itself declared what the law shall be when it takes effect, and also upon what contingency it shall take effect, and when that contingency happens it takes effect by force of the legislative will, and is in no sense a delegation of legislative power. After it takes effect upon the happening of the contingency, it is enforced under, by and in acordance with the provisions of the law enacted by the Legislature.

The second, third, and fourth propositions of relator contend that the Act is repugnant to the Fourteenth Amendment to the Constitution of the United States, and section 19 of the Bill of Rights of Texas. This question has so often and uniformly been decided contrary to relator's contention we hardly deem it necessary to discuss this matter. (State v. Lewis, 101 U. S., 22; Hayes v. State, 120 U. S., 68, and opinions of the courts of this State, cited in Harris' Annotated Constitution under section 79 of the Bill of Rights, beginning on page 184.) Such a law applies within the territory where it is adopted without discrimination in favor or against all persons within such territory, and deprives no person of any property.

The contention made under the fifth proposition, that the law is "vague, ambiguous and indefinite," and for that reason is void, needs no citation of authorities, but a mere reference to the Act itself, it being chapter 74 of the Acts of the Thirty-third Legislature. It is definite, certain and specific in its terms. All the other propositions submitted by relator are fully disposed of in the foregoing opinion.

The importance of the question herein discussed has caused us to devote an unusual amount of study, thought and consideration to the question involved. In the beginning of the study of this question the writer of this opinion seriously doubted the constitutionality of the Act— of the right of the Legislature to adopt what is termed "local option statutes," except in those instances where the Constitution of this State specifically commended the enactment of such laws, but after a careful review of the decisions of our own State, the decisions of other States, and the views of the text-writers, we have arrived at the definite conclusion that in matters of local concern and in matters of what is termed police regulations the Legislature has the authority and power to enact laws of this character—to enact a general law applicable to the whole State; its operation in different localities to be dependent upon the will of the people of the different localities as their needs and necessities may require. As said by our Supreme Court in the Stanfield case, supra, "When the extended area of this State is considered, as well as the diversity of the pursuits of the inhabitants, and the great differences in population and resources of the different counties, it would be unfortunate if the Legislature did not have the power to enable the different counties to adopt or decline some agencies of government according to the exigencies of the situation."

We must and do admit that the decisions of our State are not entirely

satisfactory on this question. If we follow the doctrine enunciated in the Swisher case, supra, it would appear that in the adoption of local option measures such legislation should be held to be a delegation of legislative authority and power. In the brief filed by the Attorney-General in that case it is stated that legislation of the character in question had been condemned by a majority of the courts, citing the cases. This was in 1856. When we take the cases there cited and find that they have been overruled in every instance (unless it be one only) by the courts in those States, who upon more mature consideration of the question held the exact reverse that such legislation was not unconstitutional, but within the discretionary power lodged in the legislative branch of the government, those cases should and do have but little weight. In the Swisher case it is stated by the judge who wrote the opinion that because the law had been repealed and was therefore of but little interest, he had not given it that thorough investigation he otherwise would have bestowed upon the question. In the Stanfield and Johnson v. Martin cases, supra, the law had not been repealed, and the Supreme Court gave them doubtless thorough consideration as they were compelled to pass upon the questions involved. As hereinbefore stated, if we had had a clear and definite rule of decision on this question in our courts, we would follow the rule, although the doctrine of *stare decisis* has but little weight where no property rights are involved, and the only issue involved is the policy of the State. The courts of about all the other States that first announced the rule of law as contended for by relator in this case, and as he contends the Swisher case announces it, have had the courage, when convinced those decisions were erroneous, to overrule them and place themselves in line with the great weight of authority. And the question with us, shall we be bound by the decisions of the court in a case in which the judge announces that he had not given the question "elaborate investigation," or that investigation he would have done if it had been necessary to decide the question, and which decision has been seriously questioned by our Supreme Court in all its later decisions, and if not overruled by the Supreme Court, at least so distinguished and limited that but little is left of it, or shall we look to the great body of the law as written and now understood and promulgated by the great law writers of this day?

The Holy Bible is a book that not one word nor line has been changed, altered or amended since it was inspired by the Supreme Being. But that does not bind us to the construction placed on those words one hundred and two hundred years ago. As civilization has advanced, the people of the world have become more enlightened, a more comprehensive understanding of the plan of salvation announced in that book of books has been obtained. At one time it was contended that the Bible could not stand the test of investigation by the learned scientific thought of the age, but now we know that the better we understand the truths stated in the Bible and the greater scientific knowledge we obtain, the more clear and manifest is the fact that the word as written is the in-

spired work of God, given us to enable us to live purer, nobler and better lives. The teachings of the Bible as understood at this day and time are not exactly what they were a hundred years ago. Education, enlightenment and advanced thought have enabled us to more clearly perceive the truth taught therein. The world is not now bound by the construction placed on the language of the Bible a hundred or a thousand years ago, and should we be bound by a construction placed on the Constitution more than half a century ago, even if the wording has not been changed, if the enlightened legal thought of the day is practically unanimous in pronouncing that construction wrong. Should we close our eyes, our ears, refuse to read, think and understand because it was once in the long ago so written, when the courts of all the other States have recognized and appreciated the error, and corrected the mistaken conception insofar as lay in their power. With us it is always a serious question when we come to a place in the law where we can not reconcile the former decisions of our own courts of last resort, when there is a conflict in the law as heretofore announced. We reconcile those differences if we can, but if it can not be done, then we feel impelled to give the question our best thought and study in the light of the law as it is now understood and written, and not declare an Act of the Legislature unconstitutional unless it is clearly so. All the text-books at our command, and from a number of which we have freely quoted, hold the law valid; the courts of last resort of nine-tenths of the States of this Union so hold, and we would feel that we were usurping authority and power conferred upon the legislative branch of the government if we were to hold the law unconstitutional because, perhaps, in our opinion it is not the character of legislation that should be adopted. As said by one of the eminent law writers, "The principle is well established that the power to make laws conferred by the Constitution on a Legislature, can not be delegated by the Legislature to the people of the State, or any portion of them. When a Legislature passes a law, it must pass entirely upon the question of its expediency; and it can not say that a law shall be deemed expedient provided that the people afterwards, by a popular vote, or otherwise, declare it to be expedient. A statute to take effect upon a subsequent event must, when it comes from the hands of the Legislature, be a law *in presenti* to take effect *in futuro*. On the question of the expediency of the law the Legislature must exercise its own judgment, definitely and finally. This well established principle has been 'the bone of contention' in the courts in many of the different States of the Union in passing upon the constitutionality of what are known as 'local option laws.' Some of the earlier decisions held that such were unconstitutional because their operation was made to depend upon the contingency of a popular vote. The leading case upon this point was decided in 1847. That case was followed by the courts of California, Delaware, Indiana, Iowa, Michigan, New York, and some others. It was, however, after an able argument and examination of the course of judicial decision upon the subject, overruled, and in all of those States

the rule has been changed except perhaps in Delaware and California, and in California the cases are in conflict. The great weight of judicial decision now is to the effect that such laws, when general in their application, do not violate the constitutional provision that the power to make laws is vested in the·Legislature. The constitutional objection to such a law is met, if the Act, when it came from the Legislature, received the Governor's approval, was properly published, and was, of itself, a complete and perfect enactment. In such case the popular will is expressed under and by virtue of a law that is in force and effect, and the people neither make nor repeal it. By this vote, petition or remonstrance, as the case may. be, they only determine whether a certain thing shall be done under the law, and not whether the law shall take effect. The law has full and absolute vitality when it passes the Legislature; and the people, under the rule of action therein given for their government, proceed to act. The same rule—the same law—is given to all the people of the State, to all parts of it; the same method for obtaining the expression of the people maintains throughout the State." For a long list of authorities holding such Acts not unconstitutional see notes one and eight to case of Chicago R. R. Co. v. Greer, 114 American State Rep., 313, pages 317 and 324. From an inspection of the authorities there cited it will be seen that there is now almost·perfect unanimity of opinion in holding such Acts constitutional.

We have written perhaps too much at length, but it is the most important question we·have had to consider for a great length of time. It has been urged that if the law is sustained the principle of local option may be applied by the Legislature to our Sunday laws, our gaming laws and other police regulations. This is true. But the wisdom of the law is for the Legislature and not for us. All we decide is, does the Constitution inhibit the Legislature from passing this character of law, and having held that it does not do so, the Legislature can apply it as they deem proper and for the best interest of the State. Should they wrongfully apply it, their Acts will be subject to control by the people of the State every two years, and their Acts, within the limits of their authority, are not subject to our control.

Being of the opinion that the law is not unconstitutional, the relator is remanded.

*Relator remanded.*

PRENDERGAST, PRESIDING JUDGE.—I fully concur.

DAVIDSON, JUDGE, dissents, and will write if motion for rehearing is overruled.

ON· REHEARING.

February 11, 1914.

HARPER, JUDGE.—Relator, accompanying his motion for rehearing, has filed a lengthy and able argument, devoting it mainly to the

propositions that the Legislature can not delegate its power to enact laws nor delegate the power to suspend a law of the State. This was wholly unnecessary, for in the original opinion we held, "if the Act in question delegated the power and authority to suspend a law of this State, or to enact a law, of course it would be unconstitutional"—"that this is a representative form of government, and that while the laws are made by the people, yet they are enacted by and through their chosen representatives—to this principle or rule of law we do not think there has ever been or can ever be any dissent."

And yet relator laboriously re-argues this question, and would by his reasoning apparently create the impression that we held otherwise, citing the case of Brown Cracker Co. v. Dallas, 104 Texas, 290, 137 S. W. Rep., 342, wherein Chief Justice Brown held:

"In Burton v. Dupree, 19 Texas Civil Appeals, 275, 46 S. W. Rep., 272, Judge Key, in his usual succinct and forcible style, points out the difference between the former and present provisions of our Constitution, and states clearly the effect such change must have upon this question. Quoting the present section 28, of article 1 of the Constitution, that learned judge says: 'This section restricts the power to suspend laws to the Legislature, and especially prohibits the exercise of such power by any other body. In view of this provision of the Constitution, it must be held (whatever may have been the power of the Legislature under former constitutions) that that body *can not now delegate to a municipal corporation or to any one else* authority to suspend a statute law of the State. We therefore hold that the provisions of the Penal Code referred to were and are in force within the entire limits of the City of Waco, as well as elsewhere in the State, and that the lease contract in question, being knowingly made for the purpose of assisting in the violation of a penal law, is contrary to public policy, and not enforcible in the courts.' Since the amendment to the Constitution, the Court of Criminal Appeals has held in accordance with Judge Key's opinion. If it be admitted that the Legislature intended to confer upon the City of Dallas authority to suspend article 361 within the district laid out, that provision of the charter would be void, because in conflict with section 28 of article 1, of our present Constitution. *The Legislature had no* authority to delegate that power to the City."

So it will be seen that it was held that "if it be conceded that the Legislature intended to confer upon the City of Dallas authority to suspend article 361, that provision of the charter would be void." Now what is held to be the law in that case was also held to be the law in the original opinion in this case; the point of difference is that it is *not conceded* that this law authorized the suspension of any law of the State, nor does relator point out how nor wherein it authorizes the suspension of any law of the State, contenting himself with the general statement that the Legislature can not delegate the power to suspend a law of the State, which was conceded in the original opinion to be the law, and is now conceded to be, and nothing said or held in the original opinion is in conflict with this rule of law.

He also refers us to the following cases: Burton v. Dupree, 46 S. W. Rep., 272, wherein it was held that article 1, section 28 of the Constitution, which provides that "no power of suspending laws of this State shall be exercised except by the Legislature," prohibits the Legislature from delegating to a municipal corporation authority to suspend State laws.

Ex parte Ogden, 43 Texas Crim. Rep., 531, wherein it was held that the Legislature can not delegate to a municipal corporation authority to pass ordinances violative of the laws of the State either by repealing or suspending the laws of the State.

Arroyo v. State, 69 S. W. Rep., 503, wherein it was held that under the Constitution the Legislature could not delegate its authority to set aside, vacate, suspend or repeal the general laws of the State, and cases cited in these opinions.

In the original opinion we reiterated the doctrine announced in these cases, because we believe they correctly announce the law, and we do now adhere to the law as announced in those cases. If it is contended that as the Legislature in section 8, article 7355 levied an occupation on pool tables in the following language: "From every billiard or pool table, or anything of the kind used for profit, twenty dollars," that the pool hall law delegates to some other body or person than the Legislature the authority to suspend this law, then his contention is not sound. The pool hall law was passed in 1913, and is the last expression of the legislative will in regard to licensing and running pool halls, and if there should be held to be any conflict between these laws, under all the authorities the last expression of their will would govern and be the law, unless this act should be held unconstitutional on other grounds. " 'The different sections or provisions of the same statute or Code should be so construed as to harmonize and give effect to each, but, if there is an irreconcilable conflict, the later in position prevails.' Lewis' Suth. on Stat. Const. (2d Ed.), 268, p. 514; citing Ex parte Thomas, 113 Ala., 1, 21 South., 369; Hand v. Stapleton, 135 Ala., 156, 33 South., 689; Van Horn v. State, 46 Neb., 62, 64 N. Y., 365; Omaha Real Estate & T. Co. v. Kragscow, 47 Neb., 592, 66 N. W. Rep., 658. And: 'If a conflict exists between two statutes or provisions, the earlier in enactment or position is repealed by the later. Leges posteriores priores contrarias abrogant.' Where there is an irreconcilable conflict between different sections or parts of the same statute, the last words stand, and those which are in conflict with them, so far as there is a conflict, are repealed; that is, the part of a statute later in position in the same act or section is deemed later in time, and prevails over repugnant parts occurring before, though enacted and to take effect at the same time. This rule is applicable where no reasonable construction will harmonize the parts. It is presumed that each part of a statute is intended to coact with every other part; that no part is intended to antagonize the general purpose of the enactment. To ascertain the legislative intent every part of an Act, and other Acts

in pari materia, are to be considered.  One part of an Act may restrict another part—an early section a later, and vice versa; but, if one part is so out of line with other parts and the general purpose of the Act that it can only operate by wholly neutralizing some other part, then the later provision is supreme, as expressing the latest will of the law-makers."  Railway v. Rambolt, 67 Texas, 654; McKenzie v. Barker, 88 Texas, 669.  In Chiles v. State, 1 Texas Crim. App., 27, when this court was first organized, it held that it was the duty of the court to construe the Acts of the Legislature so that both may stand, but if they can not be so reconciled as that both may stand, the last must stand as the expression of the legislative will, and this has always been the rule in this court and the Supreme Court.  But these two provisions of our Code are not in irreconcilable conflict, but may be and should be construed together, and in doing so we clearly follow the legislative intent and will.  The Legislature having levied an occupation on pool and billiard tables when ran for profit, later adopted another statute whereby they conferred the right on counties and justice precincts to accept the provisions of a law whereby pool halls would not be licensed, and the two statutes merely provide and mean that pool tables and bil-liard halls will be required to pay a license fee of $20 where they are permitted to be licensed, and under this construction there is no conflict between the two laws, and such construction gives force and effect to the manifest intent of the Legislature, and one would neither repeal the other nor suspend it.  The Supreme Court in the case of McKenzie v. Barker, 88 Texas, 669, states this is the proper rule of construction, for in that case they held that where one provision of the statute read "no court in this State shall have the power" when considered in connection with another provision of the statute the provision should read, "no court in this State, except the Supreme Court shall have the power," etc., that by this construction both articles would be sus-tained and this the court should do when a reasonable construction would accomplish the end.  " 'The correct rule of interpretation is that, if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them, and it is an established principle of law that all acts in pari materia are to be taken together, as if they were one law.'  Fussell v. Gregg, 113 U. S., 560, 5 Sup. Ct., 631, 28 L. Ed., 993; Nashville & Decatur Railroad v. Comans, 45 Ala., 443; Seymour v. State, 51 Ala., 54; Wilcher v. Hamilton, 15 Ga., 440; State v. Gerhardt, 145 Ind., 460, 44 N. E. Rep., 469, 33 L. R. A., 313; Brewer v. Hamor, 83 Me., 257, 8 N. W. Rep., 507, 22 Atl., 161; Simp-kins v. Ward, 45 Mich., 564, 8 N. W. Rep., 507; State ex rel. Slover, 126 Mo., 652, 29 S. W. Rep., 718; United States v. Davis, 54 Fed.. 154, 4 C. C. A., 251.

"In our State this has been the rule from the earliest date.  In Walker v. State, 7 Texas App., 259, 32 Am. Rep., 595, it is held: 'Statutes in pari materia and relating to the same subject are to be taken and con-strued together, because it is to be inferred that they had one object

in view, and were intended to be considered as constituting one entire and harmonious system.' See, also, Cain v. State, 20 Texas, 355; Ex parte Schmidt, 2 Texas App., 196; Mock v. State, 11 Texas App., 56; Taylor v. State, 3 Texas App., 169. In our Supreme Court the rule is: 'Laws relating to same subject and enacted during same session are construed together.' Austin v. Gulf, etc., 45 Texas, 234. All statutes relating to the same subject-matter should best be given concurrent efficacy in construction, and made to stand together. Dallam, 402. In order to arrive at intention of Legislature in statute, all laws in pari materia are to be construed together. Bonner v. Hearne, 75 Texas, 242, 12 S. W. Rep., 38." Scoby v. Sweatt, 28 Texas, 713; Hanrick v. Hanrick, 54 Texas, 101; Laughlin v. Seela, 59 Texas, 177; Taylor v. Hall, 71 Texas, 213; Braun v. State, 40 Texas Crim. Rep., 236; wherein it is held that the latter Act can be held a modification or exception to the earlier Act. The citation of cases could be continued, but it is seen that the proper construction to be placed on these two provisions of the statute is above stated, that is, the prior statute is modified by the later Act to the extent that the pool hall occupation tax is applicable to the territory only in which the pool halls have not been prohibited, by an acceptance of the provisions of the later Act, and there is no conflict between the two provisions of the statute, and therefore one would not and does not suspend the other.

But it may be insisted that as this statute is a permissive statute, and when accepted, if it is thereafter decided by a vote to no longer accept the provisions of it, as the Act authorizes to be done, that this would be a "suspension of a State law," but we do not suppose anyone would seriously so contend. If so we only have to refer them to other permissive statutes. Chapter 14 of title 22 of the Revised Statutes provides that if the citizens of a town or village desire to incorporate they shall petition the county judge to order an election to be held, and he shall order an election to be held, and if a majority vote in favor of accepting the provisions of that chapter, he shall so declare and enter an order to that effect, and then they become entitled to all of the benefits of that law. In the same chapter it is also provided that if after having accepted this law by a majority vote, chapter 16 of same title provides that by petition to the county judge they may have an election ordered, and if a majority vote to relieve themselves of these provisions, the county judge shall so declare and enter an order to this effect, but no one has ever contended that this was delegating to the voters the power to suspend a law of the State. The law of the State remains the same, and they may again accept its provisions if they so desire by petitioning for another election, and a majority shall so vote. The same rule of law is applied in chapters 1 and 15 of title 22. And in article 762 it is provided that the city council may accept the provisions of the statute by a two-thirds vote, and by this vote and act the laws relating to towns and villages shall be no longer of force in that territory. But no one has contended that this was delegating the

power to suspend a law; the right was acquired under a law passed by the Legislature, and the law remains the same whether accepted or rejected.

Again title 25 authorizes the creation of corporations, and the law as written governs them when created according to its provisions. This is a permissive statute, not a mandatory statute. It tells how the citizens of the State may proceed to accept the benefits of its provisions. And when they file this acceptance with the Secretary of State they are entitled to and receive all the benefits conferred by this law. A railroad company by it is given the highest function—that of eminent domain, the right to condemn and take the citizen's property. No man is bound nor required to accept the provisions of this law, and yet they can do so if they wish, and when they do, there is a penal statute to protect them in the rights thus acquired. Not only this, but the citizens under the provisions of this law can decide they no longer desire the benefits of this law, and file articles with the Secretary of State so declaring in accordance with the provisions of the law and be relieved of its provisions, but this would not and does not *suspend* chapter 25 of the Revised Statutes or any other law, and it has never been so contended.

Again, we have what is known as a State bank law. Men engaged in private bank business may if they desire accept the provisions of this law by filing the papers of acceptance therein provided; then they may elect whether they will accept the guaranty fund or bond feature securing their depositors. This is a permissive, not a mandatory statute. Under this law, they may relieve themselves of the provisions thereof, by complying with its terms, and again engage in private banking. But no one would contend that this would *suspend* the State banking law. The law would remain and they could again take advantage of its provisions if they so desired. Numerous other instances can be cited as to the permissive features of our laws. It is an error to contend that all laws must be mandatory to be constitutional, and our courts have never so held, but on the other hand it has become a well recognized principle of law that the Legislature may enact permissive statutes as well as mandatory statutes. It is true, as hereinbefore stated, the Legislature can not delegate the power to suspend a law of the State, and this rule relator correctly states, but he does not present any feature of this pool hall law that does delegate the power to suspend a State law under the well recognized rules of law as announced by this court and the Supreme Court, or as laid down by the current text-writers cited in the original opinion.

Relator cites us to some cases that hold that where the law is contingent on an election to be held to determine whether or not they will accept the benefits of the law in the territory described in the Act is a delegation of the power to *enact* a law, they holding that the vote authorized is a part of its enactment, but as shown in the original opinion, while this doctrine had some adherents for a time, yet now the great weight of authority holds that this is not a delegation of the power

to enact a law, but is but a permissive statute by which the Legislature had granted the rights and privileges therein stated, the terms thereof to be accepted in such territory as is authorized in the law whenever the conditions are such that it is deemed advisable by those residing in the territory. Relator admits that the text-writers are now virtually unanimous in stating that such a statute is not unconstitutional—that it is not a delegation of legislative authority to make a law, but the privilege grows out of the law as enacted by the Legislature, and this privilege we think the Legislature had the right to grant if there is no constitutional inhibition. But relator insists that we should not go outside the decisions of our State for light and aid in the construction of our Constitution, but we should adhere to the construction given to that instrument by our courts. Relator, in filing his original brief, did not apparently take that view, as he cited us a number of cases from other States. It was not until we had demonstrated that these decisions were no longer the law even in those States, that the latter decisions of those courts had overruled in the main the cases cited by relator, when he concluded we should narrow our investigation to the decisions of our own court, but as he insists, we shall take them as a guide; we will now discuss the case he cites from the courts of this State on this question, and some he does not cite.

In the first place, he claims that this court, as at present organized, in the case of Ex parte Farnsworth, 61 Texas Crim. Rep., 342, upholds his contention in this case. We do not think so, for as said in the original opinion, the question involved in that case is not the one here presented, and for that reason we did not discuss it. But as he apparently does not appreciate the difference in the propositions involved in that case and in this case, we will briefly refer to that case. In the beginning of the opinion to the Farnsworth case it is stated: "We may condense appellant's main contention into one general proposition, towit: The Legislature is without authority to authorize a city to carry on its affairs as a municipal corporation under what is known as the initiative and referendum." And this is the sole question passed on. While it may be contended that there are some general expressions contained in the opinion which would seemingly uphold appellant's contention, we must always look to what was involved in a case to learn what was in fact decided. In that case an ordinance was proposed by the initiative method, that is, by petition the ordinance was presented to the board of commissioners; this board did not *enact* the ordinance, but under the provisions of the charter submitted it to a vote of the people for them to decide whether or not they would enact it as an ordinance, and as a majority voted for it, when result was declared, it was contended that it was a valid ordinance without the city legislative body having ever enacted or ever having been called on to consider it further than to order an election. The court in that case correctly held that under our Constitution this is a representative form of government, and while the people in fact make the laws, yet in the *enactment*

*of laws·* they act by and through their representatives. That is all that was held in that case, and in thus announcing the law, we then held and now hold that the Farnsworth case was correctly decided, for in that case no legislative body had ever *enacted* the ordinance or law but the question submitted to a vote was whether or not it should be enacted as a law or ordinance, by the people themselves and it was the *election* that enacted it, for no legislative body had prior or subsequent to the election ever enacted the ordinance. Had the *legislative council* of the city of Dallas enacted the ordinance, and declared it to be the law, the opinion in the Farnsworth case would not have been written. In that case it was the election that was depended on as an enactment of the ordinance or law; and it should have read, "Be it enacted by the people of Dallas at an election held for that purpose." In the pool room law, the law was enacted by the Legislative body, and its validity as a law or its enactment as a statute of this State is not and was not submitted to a vote of the people. It is the law of the State whether an election is ever held under its provisions or not, and if an election is held it does not amend, subtract, nor in any manner affect the provisions of the law as enacted by the Legislature nor its validity. And right here is where the confusion has arisen. If in the adoption of the pool room law the Legislature had provided: "Be it enacted by the Legislature of Texas: Section 1. That there shall be held an election on the —— day of ——, 1913, to determine whether or not the hereinafter recited provisions and sections shall become the law of this State, and if a majority shall vote in favor of it, the Secretary of State shall tabulate the vote and so declare, and thereafter it shall become and be the law, but if a majority vote against it, then it shall not become the law of this State," then it would contravene the Constitution by delegating the power to enact the law, and be void, as was the ordinance in the Farnsworth case, supra, because its vitality or life would depend upon the election held. But chapter 74 of the Acts of the Thirty-third Legislature contains no such provisions, but in specific terms it declares what is and shall be the law of this State; and whether it shall become the law is left to the will of no other tribunal or person. The Legislature declared what the law should be and enacted it, and as enacted it is a law complete in and of itself, and the fact that in the law as enacted there is conferred certain benefits and privileges which may be accepted or taken advantage of, if the conditions in any county or justice precinct are such that the inhabitants of the county or justice precinct deem it advisable and for the best welfare of the county or justice precinct to do so, is no part of its enactment as a law. And herein was the error in the Swisher case, supra, in finding that under the law considered the Legislature had submitted to the people whether or not that Act should become the law of the State. No such question was submitted and the law would not bear that construction. If this had been a correct finding or conclusion, then the law as promulgated in the Swisher case would be the law of that case. This court and the

Supreme Court have adhered, and do now, to this announcement of law in the Swisher case. "But, besides the Constitution does not provide for such reference to the voters to give validity to the Acts of the Legislature, we regard it as repugnant to the principles of the representative form of government found in our Constitution. Under our Constitution, the principle of law-making is, that the laws are made by the people, not directly, but by and through their chosen representatives." And in this opinion we adhere to that rule of law, and this is the only part of the Swisher case that has been adhered to and followed since its rendition. Relator in his brief and argument pays a high and deserved eulogy to the able men who then composed our Supreme Court, and from which we would not detract one iota, but in ability and learning we have had many men on our Supreme Court who were their equals, such as Chief Justice Moore, Chief Justice Willie, Chief Justice Gaines, Chief Justice Brown, and hosts of others. We name the above galaxy of able jurists because they are the men who have overruled the Swisher case, is holding that the Act under consideration in that case delegated the legislative power to enact a law. This, as shown in the original opinion, was not a mature conclusion of Judge Lipscomb and the others who composed the court, for in the opinion they say: "The question presented is not now of general interest as the Act has been repealed. We shall, therefore, not give to it the elaborate investigation that we otherwise would have felt called on to bestow on it." The law upon which they were passing provided for an election to be held throughout the State, not to determine whether it should become a law, for the Act became the law of the State according to its terms, but it providing for an election throughout the State, those eminent jurists, who did not, as they say, give the question thorough investigation, misconceived its terms and held that it was a delegation of legislative authority to permit the citizens to determine under the law whether or not they would accept its provisions. Relator's counsel in their brief and argument admit that the case passed on was dismissed on other grounds, but they insist that while the court did say they did not give this question thorough investigation, yet they insist that the learned Attorney-General who filed a brief in the case did give the question thorough investigation, and he, while insisting that the Act should be sustained, yet admitted that the weight of authority was at that time against its validity, and the cases were cited. Yet, as we demonstrated, those cases have not stood the test of time and judicial investigation, and have been overruled by the courts who rendered them, and the rule announced by the Supreme Court of Vermont at that time has become the prevailing and almost unanimous rule of construction. The first case referred to by the Attorney-General in that case is Bradley v. Baxter, 8 How. N. Y. P., 18, and relator also cites us to the case of Barto v. Nimrod, 8 N. Y., 483, but these cases have been overruled by the courts of that State in the cases of Clarke v. Rochester, 28 N. Y., 605; Rome Bank v. Rome, 18 N. Y., 38, in which cases it was held that a law enacted by the Legisla-

ture may be made dependent upon its acceptance upon the popular will of the named territory.   Parker v. Commonwealth, 6 Bar (Pa.), 507, was overruled in Locke's Appeal, 72 Pa., 491, and Smith v. McCarty, 56 Pa., 359.   The People v. Collins, 3 Mich., 343, was overruled by the courts of that State in the case of Feck v. Bloomingdale, 82 Mich., 393. It is thus seen that the cases cited by the Attorney-General in his brief in the Swisher case, and upon which relator relies, have all been overruled, and those courts now hold that an election under and by virtue of the law to decide whether they will accept its provisions in territory named in the Act is not a part of the enactment of the statute, where it is a complete statute, as the pool hall law is.

Relator insists that as the Swisher case had so held, in 1856, and the Constitution of 1876 contains commands in two instances, the stock law and intoxicating liquors, that the Legislature shall adopt this character of legislation, then this would indicate that the framers of the Constitution accepted the construction placed upon what is deemed a delegation of authority to enact a law in the Swisher case and therefore a law that authorizes the voters to accept its provisions in given territory, is a delegation of legislative authority under such construction we should follow that construction.   There might be some force to this contention if the Supreme Court, the same court that rendered the opinion in the Swisher case, had not held otherwise prior to the writing and adoption of the Constitution of 1876.   In the case of San Antonio v. Jones, reported in 28 Texas, 19, the question again arose of what is a delegation of legislative power, and whether authorizing a vote to be held under the law is a part of the enactment of a law.   An Act was passed incorporating the San Antonio and Mexican Gulf Railroad Company, in which charter cities and counties were authorized to subscribe for stock in said railway corporation in an amount not to exceed $50,000 each: provided, "That the chief justice and county commissioners of said counties shall not make such subscriptions unless two-thirds of the qualified electors of said county or counties, at an election to be held for that purpose, shall vote in favor of such subscription being made; and the chief justice of any county may order such elections to be held, and shall give notice of the time and object of such elections, by causing notice thereof to be posted up in each precinct of the county at least thirty days before the holding of such election; said election to be conducted in the manner regulating county elections, so far as the same may be applicable; provided, also, that the said mayor and aldermen of the city of San Antonio, and the towns upon the line and at the terminus of said railway on the gulf, shall not make such subscriptions unless two-thirds of the electors of said city or towns, qualified to vote for town or city officers at an election to be held for that purpose, shall vote in favor of such subscription being made; and said election shall be conducted in the same manner regulating the respective city or town elections, so far as the same may be applicable."   The contention was made that this was a delegation of legislative authority, and the Supreme

Court of this State, in an opinion by Chief Justice Moore, concurred in by all the court, held that this was not a delegation of legislative authority or power and was no part of its enactment as a law; that to leave such question to the people to decide by a vote at an election to be held under the provisions of the law, was not unconstitutional. After holding that the part of the opinion in the Swisher case that held the Legislature could not delegate its power was sound (and which we now say), Chief Justice Moore says:

"It is not a legitimate construction of the Act to incorporate the San Antonio and Mexican Gulf Railroad Company to say that the Legislature intended, or did thereby confer, upon the citizens of the city of San Antonio any legislative power whatever. The Legislature may grant authority as well as give commands, and acts done under its authority are as valid as if done in obedience to its commands. Nor is a statute, whose complete execution and application to the subject-matter is, by its provisions, made to depend on the assent of some other body a delegation of legislative power. The discretion goes to the exercise of the power conferred by the law, but not to make the law itself.

"The law, in such cases, may depend for its practical efficiency on the Act of some other body or individual; still, it is not derived from such Act, but from the legislative authority. Legislation of this character is of familiar use, and occurs whenever rights or privileges are conferred upon individuals or bodies, which may be exercised or not in their discretion. And if it may be left to the judgment of individuals or private corporations whether they will avail themselves of privileges conferred by the Legislature, there is certainly no valid reason why the same may not be done with citizens of a town or district, who, as a class, are to be affected by the proposed Act. Williams v. Commack, 27 Miss., 221; Dubuque County v. Dubuque & Pacific R. R. Co., 4 G. Greene (Iowa), 2, and cases referred to above."

Thus specifically holding that in leaving the question of the application of the law to a vote of the people was not a delegation of legislative authority. This opinion was rendered in 1866, ten years prior to the adoption of the Constitution of 1876, and overrules the Swisher case as to what is a delegation of legislative power and authority, and it can not be contended that members of the constitutional convention of 1876 had in mind the opinion in the Swisher case, and did not know of this opinion of Chief Justice Moore rendered ten years after the Swisher case, and ten years before the constitutional convention.

Again in the case of Werner v. City of Galveston, 72 Texas, 22, where the question presented was the constitutionality of the law which authorized cities and towns by a majority vote at an election held to determine whether or not they would take control of the public schools, it was urged that under the Swisher case this would be a delegation of legislative authority, Chief Justice Gaines, speaking for the court, holds: "While it is settled that the Legislature can not delegate its authority to make laws by *submitting the question of their enactment*

*to a popular vote,* it does not follow that the Legislature has no authority to confer power upon a municipal corporation, and to authorize its acceptance or rejection by the municipality according to the will of the voters expressed at the ballot box," and quotes from Mr. Dillon: "It is well established that a provision in a municipal charter that it shall not take effect unless assented to or accepted by a majority of the inhabitants *is in no just sense a delegation of legislative power,* but merely a question as to the acceptance or rejection of a charter." 1 Dillon on Mun. Cor., section 44.

In the case of Graham v. Greenville, 67 Texas, 62, Chief Justice Willie, speaking for the court, says: "While the Legislature is not bound to obtain the assent of the persons residing within the contiguous territory before annexing it to a city, it may do so and provide that the annexation shall not take place unless a majority of such persons shall assent thereto in some manner prescribed by the Legislature. *This is in no sense a delegation of legislative power."* In the case of Stanfield v. State, 83 Texas, 317, as shown by the original opinion, it was held that where the Legislature had passed a law authorizing the Commissioners Court of the various counties, to accept or not accept its provisions, and if accepted, to later withdraw the county from under its provisions, it was held that this was not a delegation of legislative power and authority, and the law as passed by the Legislature was a permissive statute, complete when it left the legislative halls, and the fact the law left it to the determination of the Commissioners Courts of the various counties to determine whether or not they would accept its provisions, did not render the act unconstitutional. It would be neither the delegation of power to enact a law nor to suspend a law, although a county by vote of those authorized might be taken from under its provisions.

Again in the case of Johnson v. Martin, 75 Texas, 33, it was held that where the law authorized the Commissioners Court to determine whether or not the cotton weighers law should be accepted or taken advantage of in their counties, and, if so, to create the office of cotton weigher in whatever towns, etc., where in their wisdom it was deemed advisable, and to appoint or order to be elected a public weigher, it was contended that this was a delegation of legislative power, for it was contended it took the Act of the Commissioners Court to put the law in force in any particular place or county. The question is discussed at length, and the court in that opinion recognized that it was holding contrary to the holding in the Swisher case on what is a delegation of legislative power to enact a law, for in citing authorities, it cites Swisher v. State, 17 Texas, 441, as holding adversely and then proceeds to hold the rule as announced in the Swisher case is not the law, and the court in that case had arrived at incorrect conclusions as to what is a delegation of legislative power, and cites as authority for such holding Werner v. Galveston, 72 Texas, 22; Graham v. City, 67 Texas, 62, and other cases. It further approvingly quotes: "The privilege of the electors of a district to be affected by a law to say whether they will

accept its provisions, the law giving them the right to accept or reject is now generally permitted, and regarded as constitutional," citing People v. Stout, 23 Barb., 349; Down v. Wilcox, 45 Mo., 458; Bank v. Brown, 26 N. Y., 470; San Antonio v. Jones, 28 Texas, 19. In the case of Brown v. The City of Galveston, 97 Texas, 1, the present Chief Justice of the Supreme Court, Judge Brown, learnedly and at length discusses these constitutional questions, and under the rules therein announced there is no inhibition in the Constitution prohibiting the adoption of this character of legislation.

Thus it is seen that in every decision rendered by our Supreme Court since the opinion in the Swisher case, supra, was rendered, while the law announced that the Legislature could not delegate its power to enact a law has been approved, and is here now approved and followed, but that portion of the opinion which held that the Act then under consideration was a delegation of the power to enact a law has not been followed, but the exact contrary has been held in every case that has come before our Supreme Court beginning with San Antonio v. Jones, 28 Texas, 19, down to the present time. In the Johnson v. Martin case, supra, that case was specifically named, and the court announced it was not the law and would not follow that case wherein it so held.

However, relator in his motion for rehearing says that we bow too much to the opinions of the Supreme Court and do not give due weight to the opinions of our own court. As relator relied on the Swisher case to sustain his contention, and this opinion was by the Supreme Court, we naturally took the opinions of the Supreme Court to demonstrate that what was there held to be a delegation of legislative power was not a delegation of the power conferred on the Legislature to enact laws, and that in this respect that case had never been followed by the Supreme Court, but the exact contrary held to be the law. Relator seems to contend that the court as at present organized is the first to recognize that Locke's Appeal (which overruled the case of Parker v. Commonwealth so much relied on by relator) correctly announced the law, as to what constituted a delegation of legislative power, and it is intimated in so doing we have become "progressive and revolutionary." In the case of Ex parte Mato, 19 Texas Crim. App., 112, this court when composed of Judges Hurt, White and Willson had for consideration the very question here presented—what constitutes a delegation of legislative power—and they followed and adopted the rule announced in Locke's Appeal. The question in that case was: "Whether the Acts of the Legislature purporting to confer upon district judges authority to fix the time for holding and the terms of court in newly organized counties, whenever any unorganized county in their districts should become organized, was unconstitutional and void, such acts being an effort on the part of the Legislature to delegate a power it alone could exercise." In a unanimous opinion this court held in an opinion by Judge White:

"Independently of view above discussed, however, does the Act in

question delegate to the judge legislative powers in contravention of section 1, of article 2, of the Constitution? The Legislature can not delegate any of its powers unless authorized to do so by the Constitution. (Willis v. Owen, 43 Texas, 41.) Mr. Cooley says: 'One of the settled maxims of the laws is that the power conferred upon the Legislature to make laws can not be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain.' * * * 'But,' he says, 'it is not always essential that a legislative act should be a completed statute which must in any event take effect as law at the time it leaves the hands of the legislative department. A statute may be conditional, and its taking effect may be made to depend upon some subsequent event.' (Cooley's Const. Lim. (4th Ed.), pp. 141, 142.)

"In Locke's Appeal, Agnew, J., uses this forcible language: 'To assert that a law is less than a law because it is made to depend upon a future event or act is to rob the Legislature of the power to act wisely for the public welfare whenever a law is passed relating to a state of affairs not yet developed, or to things future and impossible to be fully known.' Again he says: 'The true distinction I conceive is this: The Legislature can not delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which can not be known to the law-making power, and must therefore be a subject of inquiry and determination outside of the halls of legislation.' Again he says: 'If a determining power can not be conferred by law, there can be no law that is not absolute, unconditional and peremptory; and nothing which is uncertain, unknown and contingent can be the subject of law.' (72 Pa. St., 491.) In Moers v. City of Reading, Chief Justice Black says: 'Half the statutes on our books are in alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it can not be said that the exercise of such a discretion is the making of the law.' (9 Harris, 188.)

"In his dissenting opinion in Locke's Appeal, supra, Chief Justice Sharswood says, 'There are a good many acts of executive administration which they (the Legislature) can delegate to the courts, or to the municipal corporations, or to the people of the different districts. * * * Acts of executive administration are not Acts of legislation in the sense in which it was decided that the Legislature has no power to delegate its authority.'

"In Bull v. Read, 13 Gratt., 78, it is said: 'Now if the Legislature may make the operation of its Act depend on some contingency thereafter to happen, or may prescribe conditions, it must be for them to judge in what contingency and upon what condition the Act shall take effect. They must have power to prescribe any they think proper.'

"In King v. Reed, 43 N. J. L., 186, there was a provision in an act for the construction of a sewer which should receive drainage from three towns, and commissioners were by the Act to be subsequently appointed, whose duty it was to ascertain the entire cost of the improvement and divide it among the towns in proportion to the benefits received by the land in each; held not void as an attempt to delegate legislative power. In that case Judge Cooley is quoted as saying: 'If the rule is prescribed which in its administration works out the result, that is sufficient; but to refer the making of the rule to another authority would be in excess of legislative authority.' (Cooley on Taxation, 50.)

"In Harriman v. The State, 2 G. Greene (Iowa), 270, where the question was as to the constitutionality of an Act authorizing judges to hold special terms of the District Court where the Constitution provided that such terms of the District Court should be held 'at such times and places as might be prescribed by law,' it was said: 'But, had the Legislature conferred upon the judges by statute authority to prescribe the times generally of holding their courts, would it not still be done by authority of law? It would still be a regulation emanating from the supreme legislative and only authorized power, within the general meaning and spirit of the organic law, if not within its strict letter.'

"These are authorities from other States. Our own Supreme Court has given expression to its views upon the subject in perfect harmony with the authorities cited, if not in equally as emphatic and pronounced language," citing San Antonio v. Jones, 28 Texas, 19, quoting the language of that opinion hereinbefore copied approvingly.

So it is seen when the question was first presented to this court, the "old court," Judges White, Hurt and Willson, adopted the rule announced in the case of San Antonio v. Jones, supra, which holds that legislation of the character that gives to the voters the permissive right to accept or reject the provisions of a law, as is done in this pool room case, is not unconstitutional, and not the rule announced in the Swisher case.

Again, in the case of Ex parte Lynn, 19 Texas Crim. App., 293, when the constitutionality of our local option law prohibiting the sale of intoxicating liquors on the very grounds and all the grounds relied on by relator in this case, Judges White, Hurt and Willson say, in an opinion by Judge Willson: "It is claimed that the local option law is unconstitutional, because it is violative of sections 15, 16, 17 and 19 of our Bill of Rights, and of article 5, and section 50 of article 14, of the amendments to the Constitution of the United States." The court says:

"The principal argument urged in support of this position is, that the effect of the local option law is to take or damage private property for public use, without compensation to the owner, and without due course of law. There is strong reasoning in support of the position, and, were it an original question, this court would be inclined to hold that the local option law is an infringement of section 1, of our Bill

of Rights, which provides that 'no person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person,' etc. We would be inclined to adopt the views and reasoning of Judge Comstock, so clearly and ably expressed in the case of Wynehamer v. The People, 3 Kernan (N. Y.), 378. But opposed to these views there is a strong and almost uniform array of authorities which unequivocally declare that laws such as our local option law are within the scope of the police powers of a State, and do not take, damage or destroy private property for public use within the meaning of that provision of the organic law, and do not infringe upon any other provision of constitutional law.

"Upon this subject Mr. Cooley, in his work on Constitutional Limitation, says, after discussing the license cases decided by the Supreme Court of the United States (5 Howard, 504) : 'It would seem from the views expressed by the several members of the court in these cases that the State laws known as prohibitory liquor laws, the purpose of which is to prevent altogether the manufacture and sale of intoxicating drinks as a beverage, so far as legislation can accomplish that object, can not be held void as in conflict with the power of Congress to regulate commerce, and to levy imposts and duties. And in several cases it has been held that the fact that such laws may tend to prevent, or may absolutely preclude, the fulfillment of contract previously made, is no objection to their validity. Any change in the police laws, or, indeed, in any other laws, might have a like consequence. The same laws have also been sustained when the question of conflict with State Constitutions, or with general fundamental principles, has been raised. They are looked upon as police regulations, established by the Legislature for the prevention of intemperance, pauperism and crime, and for the abatement of nuisances. It has also been held competent to declare the liquor kept for sale a nuisance, and to provide legal process for its condemnation and destruction, and to seize and condemn the building occupied as a dramshop on the same ground. And it is only where, in framing such legislation, care has not been taken to observe those principles of protection which surround the persons and dwellings of individuals, securing them against unreasonable searches and seizures, and giving them a right to trial before condemnation, that the courts have felt at liberty to declare that it exceeded the proper province of police regulation. Perhaps there is no instance in which the power of the Legislature to make such regulations as may destroy the value of property, without compensation to the owner, appears in a more striking light than in the case of these statutes. The trade in alcoholic drinks being lawful, and the capital employed in it being fully protected by law, the Legislature then steps in, and, by an enactment based on general reasons of public utility, annihilates the traffic, destroys altogether the employment, and reduces to a nominal value the property on hand. Even the keeping of that, for the purposes of sale, becomes a criminal offense;

and, without any change whatever in his own conduct or employment, the merchant of yesterday becomes the criminal of today, and the very building in which he lives and conducts the business, which to that moment was lawful, becomes the subject of legal proceedings, if the statute shall so declare, and liable to be proceeded against for a forfeiture. A statute which can do this must be justified upon the highest reasons of public benefit; but whether satisfactory or not, the reasons address themselves exclusively to the legislative wisdom.' (Cooley on Const. Lim., pp. 727, 728.) Mr. Mills, in his standard work on Eminent Domain, says: 'The manufacture and sale of intoxicating liquor may be declared unlawful and the liquor forfeited. The fact that buildings and machinery devoted to the manufacture of liquor thereby become greatly reduced in value does not call for compensation to the owner.' (Mills on Em. Do., 8.)

"The above quoted texts are abundantly and overwhelmingly supported by adjudicated cases in a number of the States of the Union. It would be an unprofitable consumption of time to review these cases in detail. They are collated in an exhaustive note to the case of Commonwealth v. Kimball, reported in 35 Am. Dec., p. 331 et seq. (See also 12 Am. Law Register, 129.) By the great weight of authority it is established too firmly and emphatically to be now questioned, that a law such as our local option law is constitutional legislation, and, whatever may be the strength of the reasoning against the correctness of these authorities, the matter is stare decisis."

While we have a provision in our Constitution commanding the Legislature to enact this character of law in regard to intoxicating liquors, yet we are about the only State in the Union having such a provision in its Constitution, and yet these laws have been uniformly upheld and if it may thus be applied to intoxicating liquors because subject to the police power, then it may be applied to any other subject or thing that is subject to regulation and control under the police power of a State. The rule is thus stated by Mr. Lewis, a well known text-writer, citing the authorities named.

"Although there is some conflict of authority, the great weight thereof tends to firmly establish the doctrine that though the Legislature can not delegate its power to enact laws, yet whether or not an enacted law shall become operative may be made to depend upon the popular will of the citizens of the place or locality where the statute is intended to operate, and, generally speaking, an Act of the Legislature affecting the people of a certain locality or of the whole State is not unconstitutional or invalid, simply because, by its terms, it is to take effect only after it shall have been approved by a majority of the popular vote of the people of the locality where it may take effect. Such a statute, says the great majority of the cases, is not an unlawful delegation by the Legislature of its power to enact laws: Hobart v. Butte Co. Supervisors, 17 Cal., 23; Robinson v. Bidwell, 22 Cal., 379; People v. Solomon, 51 Ill., 37; Erlinger v. Boneau, 51 Ill., 94; Clarke v. Rogers, 81 Ky., 43; State v.

Pond, 93 Mo., 606; State v. Hoagland, 51 N. J. L., 62, 6 Atl., 166; Noonan v. Freeholders, 51 N. J. L., 454, 18 Atl., 117; State v. County of Hudson, 52 N. J. L., 398, 20 Atl., 255; Clarke v. City of Rochester, 5 Abb. Pr., 107; Smith v. McCarthy, 56 Pa., 359; State v. Copeland, 3 R. I., 33; Louisville, etc., R. R. Co. vs. Davidson County Court, 1 Sneed, 637, 52 Am. Dec., 424; State v. Parker, 26 Vt., 357; Rutter v. Sullivan, 25 W. Va., 427; State v. O'Neill, 24 Wis., 149; State v. City of Janesville, 26 Wis., 291. The Legislature has power to pass a conditional statute and to make its taking effect depend upon some subsequent event, and it may also provide within what time an act may be done, if done at all. Making certain provisions of an Act depend upon a vote of the people of a county does not delegate to the people the power to pass or repeal the Act, which is a valid statute from the time of its passage and approval, especially where the Legislature itself provides that if the provisions of the Act be not accepted within the period named therein, they shall not thereafter be carried into effect: People v. McFadden, 81 Cal., 489, 15 Am. St. Rep., 66, 22 Pac., 851. The reasons for the rule are well stated in State v. Pond, 93 Mo., 606, 6 S. W. Rep., 469, to be that while the rule that the Legislature is alone invested with the power to make laws and can not delegate its authority to the people does not admit of question or doubt, yet another rule is as firmly established; namely, that the Legislature may enact a law to take effect or go into operation, on the happening of a future event or contingency, and such contingency may be a vote of the people; and a local option act providing that any county, or town, or city of a class named, may, by a majority vote, place such county, town or city under the operation of the law, it does not refer to them the question of passing a law. The Legislature has already done this, and only called upon them to decide by a vote whether they will accept the provisions of a law regularly enacted by both houses of the Legislature and approved by the Governor. It is the law itself which authorizes the vote to be taken, and when taken, the law, and not the vote, declares the result which shall follow the vote. The vote is the means provided to ascertain the will of the people, not as to the enactment of the law, but whether it shall take effect, and if the majority vote against it, the law and not the vote, declares the result. The vote springs from the law, and not the law from the vote. In an early California case it was decided that where a law is passed providing that certain acts shall be done upon the contingency of the vote of the electors of a certain district, the vote upon such proposition is not an Act of legislation, but simply an event upon the happening of which the law is to take effect: Robinson v. Bidwell, 22 Cal., 379.

"The power to enact laws necessarily includes the right in the law-making power to determine and prescribe the conditions upon which the law in a given case shall come into operation or be defeated, and this contingency may as well be the result of the vote of the people of the locality to be affected by the law as any other: People v. Salomon, 51

Ill., 37. Hence, it is fairly within the scope of legislative power to prescribe, as one of the conditions upon which the law in a given case shall come into operation or be defeated, that it shall depend upon a vote of the people of the locality to be affected by its provisions: Erlinger v. Boneau, 51 Ill., 94."

Again it is said by the same author: "A local option liquor law authorizing the municipal divisions of the State to decide by popular vote whether a prohibitive or restrictive liquor law shall be in force within their limits, if it is a complete enactment in itself, requiring nothing further to give it validity, and depending upon the popular vote only for a determination of the territorial limits of its operation, is a valid and constitutional exercises of the legislative power. To this effect the authorities are numerous and uniform: Boyd v. Bryant, 35 Ark., 69, 37 Am. Rep., 6; State v. Wilcox, 42 Conn., 364, 19 Am. Rep., 536; Territory v. O'Connor, 5 Dak., 397, 41 N. W. Rep., 746, 3 L. R. A., 355; Caldwell v. Barrett, 73 Ga., 604; Groesch v. State, 42 Ind., 547 (in effect overruling Mesheimer v. State, 11 Ind., 482; Maize v. State, 4 Ind., 342; State v. Forkner, 94 Iowa, 1, 62 N. W. Rep., 772, 28 L. R. A., 206; Commonwealth v. Weller, 14 Bush, 218, 29 Am. Rep., 407; Gayle v. Owen County Court, 83 Ky., 61; Fell v. State, 42 Md., 71, 20 Am. Rep., 83; Slymer v. State, 62 Md., 237; Commonwealth v. Dean, 110 Mass., 357; Feek v. Bloomingdale, 82 Mich., 393, 47 N. W., 37, 10 L. R. A., 69; State v. Cooke, 24 Minn., 247, 31 Am. Rep., 344; Leoman v. Peyton, 64 Miss., 161, 8 South., 235; Schulherr v. Bordeaux, 64 Miss., 59, 8 South., 201; State v. Pond, 93 Mo., 606, 6 S. W. Rep., 469; Ex parte Handler, 176 Mo., 383, 75 S. W. Rep., 920; In re O'Brien, 29 Mont., 530, 75 Pac., 196; Paul v. Gloucester, 50 N. J. L., 287; State v. Rouch, 47 Ohio St., 478; Stevens v. State, 61 Ohio, 597, 56 N. E. Rep., 478; Fouts v. City of Hood River, 46 Or., 492, 81 Pac. 370, 1 L. R. A. (N. S.), 483; Locke's Appeal, 72 Pa., 491, 13 Am. Rep., 716; State v. Barber (S. Dak.), 101 N. W. Rep., 1078; Ex parte Lynn, 19 Texas Crim. App., 293; Ray v. State, 47 Texas Crim. Rep., 407, 83 S. W. Rep., 112; State v. Parker, 26 Vt., 357; State v. Scampini, 77 Vt., 92, 59 Atl., 201; Savage v. Rase, 84 Va., 619, 5 S. E. Rep., 565. The above cited cases generally maintain that such a local option liquor law is not unconstitutional as a delegation of legislative power to the people, since the reference to the voters is not for the purpose of enabling them to make a law, but simply and merely to accept or reject by their vote its provisions in their particlar district or locality: Caldwell v. Barrett, 73 Ga., 604; Groesch v. State, 42 Ind., 547; Santo v. State, 2 Iowa, 165, 63 Am. Dec., 487; Sparks v. Commonwealth, 13 Bush., 485; Schulherr v. Bordeaux, 64 Miss., 59, 8 South., 201; In re O'Brien, 29 Mont., 530, 75 Pac., 196; Savage's Case, 84 Va., 619, 5 S. E. Rep., 565; Weil v. Calhoun, 25 Fed., 865. * * * Geebrick v. State, 5 Iowa, 491. Although a general local option liquor law may be adopted in some parts of the State and rejected in others, it is not for that reason unconstitutional, as lacking in uniformity,

provided it is submitted in the same way to all the counties or other political divisions of the State; nor is such a law unconstitutional as constituting a private local or special law: Territory v. O'Connor, 5 Dak., 397, 41 N. W. Rep., 476, 3 L. R. A., 355; State v. Forkner, 94 Iowa, 1, 62 N. W. Rep., 772, 28 L. R. A., 206; Groesch v. State, 42 Ind., 547; State v. Pond, 93 Mo., 606, 6 S. W. Rep., 469; Ex parte Swann, 96 Mo., 44, 9 S. W. Rep., 10; In re O'Brien, 29 Mont., 530, 75 Pac., 196; Paul v. Gloucester, 50 N. J. L., 585, 15 Atl., 272, 1 L. R. A., 86; Cordon v. State, 46 Ohio St., 607, 23 N. E. Rep., 63, 6 L. R. A., 749; Lloyd v. Dollisin, 23 Ohio C. C., 571; State v. Barber (S. Dak.), 101, N. W. Rep., 1078."

Relator also refers us to the case of Ex parte Massey, 49 Texas Crim. Rep., 60, and asks why not follow the decision of the court in that case or expressly overrule it, so that the bar may understand what is the holding of the court. We always thought when a case was once overruled it was not necessary to do so again. In the Massey case this court held that the law passed prohibiting the solicitation of orders for intoxicating liquors was invalid because it violated the Federal Constitution in that it was an interference with interstate commerce. When construing the constitutions and statutes of another State, we have always understood the rule to be that the construction placed on the Constitution by courts of that State should govern. In the case of Delamater v. South Dakota, 205 U. S., 93 (5 Law. Ed., 724), the Supreme Court of the United States in an opinion by the present Chief Justice, Justice White, held that a statute prohibiting the soliciting of orders for intoxicating liquors in territory where prohibition was adopted was not violative of the Constitution and statutes of the United States since the passage of the Wilson Act adopted in 1890. Being of the opinion that under the well known rules of construction, that the construction placed on the Federal Constitution and the laws of the United States by the Supreme Court of the United States was binding and should be followed, this court, in the case of Edmanson v. State, 64 Texas Crim. Rep., 413, overruled the Massey case reported in the 49 Texas Crim. Rep., 60, and having done so once, we did not deem it necessary to do so again. In the Massey case Judge Brooks dissented, and Judge Henderson filed a concurring opinion, in which he held that the Legislature could only pass a law prohibiting the sale, and could pass no other law in aid thereof in local option territory. This court, in the case of Fitch v. State, 58 Texas Crim. Rep., 366, overruled the Massey case on that point, and says such a holding would be a "monstrous doctrine." An able and learned legal writer recently said in Case and Comment, after reviewing all the authorities on soliciting and taking orders since the adoption of the Wilson Bill: "The only case in any of the courts holding that a section of this kind is unconstitutional on the ground that it is an interference with the interstate commerce, is the case of Ex parte Massey, 49 Texas Crim. Rep., 60. The opinion is concurred in by only two justices, and Brooks, J., dissented.".

In the foregoing citation of authorities each and every question presented by relator is specifically decided against him as we read the law. Relator, however, asks us to consider the case of Wright v. Cunningham, a Tennessee case reported in 91 S. W. Rep., 293—claiming that this case had not been overruled by the Tennessee court, if all the other cases cited by him from other States had been questioned or overruled. We have read this case carefully and thoughtfully, but it does not change our views of this question. In fact the force and strength of that opinion is seriously brought in doubt in a later opinion by the same court. State v. Evans, 122 Tenn., 187. The decisions of our State hold to the contrary (except the Swisher case hereinbefore discussed), and the reasoning of those cases we think is sound. Not only is this true, but in Arkansas on the west, the Tennessee Court is held to be wrong. Boyd v. Bryant, 35 Ark., 69; in Kentucky on the north, Clarke v. Rogers, 81 Ky., 43; in Mississippi on the south, Lemon v. Peyton, 64 Miss., 161; in North Carolina, Georgia and Virginia on the east. Cain v. Devine, 86 N. C., 8; Caldwell v. Barrett, 73 Ga., 604; Savage's case, 84 Va., 619, it is held not to be the law. In fact cases might be cited from all the surrounding States, as well as the other States in the Union, and if the court in Tennessee has not overruled that case, yet they have seriously impaired its force, and it stands almost solitary and alone now in so holding, and under such circumstances we do not think we would be justified in following it.

In the list of authorities cited in this and the original opinion will be found cases overruling or questioning the soundness of every case cited by relator, unless it be the Tennessee case, and it recognizes that the Legislature may pass laws to go into effect upon a future contingency, but holds that an election amongst those who are to be affected by the law, is not a contingency that should be recognized. In this we do not agree with that court, as do not most of the courts of last resort and all the law text-writers of today as hereinbefore shown.

The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, Judge.—This opinion was given me yesterday. I have not had time to investigate the matters mentioned in the opinion fully, but will do so as soon as possible and write some observations. I dissent.

DAVIDSON, Judge (dissenting.)—The majority of this court, speaking through Judge Harper, have delivered two elaborate opinions upon the questions involved in this case, devoting over fifty typewritten pages to the discussion of same; and it is with some regret that I feel called upon to dissent from the conclusions reached by the majority. That regret is based upon the profound conviction that the decision is unsound, and does violence to the Constitution, and to the fundamental principles of our government. It is believed that the judgment and opinion of the majority is so out of harmony with the great weight of

judicial authority in this State, is so much opposed to reason, law, and established principles, and is so revolutionary and fraught with possibilities of such deplorable consequences, that this dissent should embrace a full review of the grounds of that opinion.

In the original opinion of my brethren, it is a remarkable fact that it ignored many of the strongest cases cited in relator's brief from the courts of this State. In the opinion upon motion for rehearing, many of these cases are for the first time noticed, and it is sought to distinguish them from the instant case; but I shall attempt to show that this can not be successfully done.

The opinion of the majority seems to be grounded upon the proposition that the pool room statute is a "local option law," submitting to the voters a police measure, and that the provisions thereof making its operation and effect dependent upon the vote of the people, does not constitute a delegation of legislative authority either to make a law or to suspend a law. The opinion seems to proceed upon the theory that there is a distinction between local option laws and general laws affecting the whole State, as to the power of the Legislature to require or authorize the sanction of a popular vote, upon the expediency, effect and operation of the law. I take issue with my brethren upon this proposition, and insist that no such distinction exists in reason, or principle, as will be demonstrated at a later point in this opinion.

The doctrine that the Legislature, under our Constitution, is without power to submit to the voters of counties and subdivisions, local option laws, depending for their force and vitality upon a vote of the people, was first laid down by our Supreme Court in the case of State v. Swisher, 17 Texas, 441. This case has become a landmark in Texas jurisprudence, but it is sought by the majority to destroy or impair the force of that decision by the claim that it was not well considered, and that it has been since virtually overruled by the Supreme Court. To the first suggestion it may be replied that the Attorney-General of the State filed a thorough and elaborate brief in that case, citing the leading cases decided at that time, and admitted that the weight of judicial authority was against the validity of the legislation there considered. The court had the benefit of his brief, and the authorities cited therein, and it is clear from Judge Lipscomb's language that the court did consider, and had a perfect grasp of the meaning and effect of our Constitution. To demonstrate this, the following quotation from his opinion is sufficient:

*"But, besides the fact that the Constitution does not provide for such reference to the voters to give validity to the Acts of the Legislature,* we regard it as repugnant to the principles of the representative government formed by our Constitution. Under our Constitution, the principle of law-making is that laws are made by the people, not directly, but by and through their chosen representatives. By the Act under consideration, this principle is subverted, and the law *is supposed to be made at least by the popular vote of the people,* leading inevitably to

what was intended to be avoided, confusion and great popular excitement in the enactment of laws.

"There is no analogy between the Act of our Legislature and the various Acts of Congress, depending upon a future contingency of a rebellion, insurrection, foreign war, a treaty, or the acts of a foreign power. *These do not depend upon the vote of the constituency of Congress,* but on a contingency over which they have no control. It is believed, however, that this supposed analogy is the vice of the opinion of the court of Vermont."

Here is intrinsic evidence that the attention of the court was centered upon the principles involved in the doctrine they were discussing, and that the holding was in line with the best considered cases at that date. The decision was by that great trio of judges of the first Supreme Court of Texas, Hemphill, Wheeler, and Lipscomb, conceded to have had no superiors, if indeed, they have had peers in the entire history of the Supreme Court of this State. It is respectfully asserted that a decision by that great court can not be discredited, and its authority denied, except upon the plainest ground of error, or else overruled by later decisions of the same tribunal. Neither of these conditions exists, as I shall undertake to show later.

Again, it is claimed by the majority that the language quoted from the Swisher case was *obiter dictum,* but an examination of the report of that case will show that this contention can not be sustained. Moreover, Judge Harper, more than once in the original opinion, refers to the fact that the Swisher case was decided in 1856,—as he expresses it, *"in the long ago."* But what has that to do with the proper solution of the great constitutional questions involved in this case? If the Swisher case was correctly decided, age but sanctifies it and strengthens its force. Great principles do not vary. Truth is changeless and immortal— "The eternal years of God are hers." I must enter my earnest protest against the destruction of this landmark of Texas jurisprudence on the ground of age.

Furthermore, it is evident from the statements in the majority opinion that in spite of the claim of *obiter dictum,* and of the alleged slight consideration of the question by the Supreme Court in the Swisher case, the majority of this court have been strongly impressed with the force and weight of that decision; because it is more than once stated in the opinion of the majority that this court would follow the doctrine of the Swisher case, had it not been practically overruled in later cases by the Supreme Court. At a later point in this dissent it will be shown that the Supreme Court of this State has never overruled, or even questioned the doctrine of the Swisher case, as applied to a statute such as was before the court in that case.

Another case cited in relator's brief is that Ex parte Farnsworth, 61 Texas Crim. Rep., 353, 135 S. W. Rep., 535, a decision by this court. The opinion was written, not "in the long ago," but in the near year 1911; and this court was then composed of the same members as now. It was

fully concurred in by all the members of the court, and until the majority opinion was written in the instant case, and relied upon by relator, has never been questioned by either of my brethren.

It is said by the majority that the exact question now before us was not involved in the Farnsworth case; but it will be found that the case involved the validity of an ordinance of the City of Dallas, passed and put into operation under what is termed the "initiative and referendum" clause of the city charter. The validity of this ordinance was directly assailed in said case upon the ground that the charter provisions, authorizing ordinances to be enacted under the referendum clause, was an unconstitutional delegation of legislative authority to make and to suspend laws. The question discussed, therefore, was directly before the court, and the ordinance was on this ground declared void. It is true that the decision of the court was rested upon the further ground that the ordinance so passed, deprived the applicant of his property without due process of law. But that consideration does not impair in the least the force of the decision of this court upon the question of delegation of legislative authority. The decision was based upon both of the aforesaid grounds, and the case is as much authority for the one proposition as the other. I quote briefly from the language of the opinion in the Farnsworth case:

"It is equally certain that the people can not be reinvested by the Legislature with the functions of legislation conferred by them on a department of government, nor can the Legislature render the enactment of a law dependent upon the acceptance by the people by popular vote. See cases already cited. . . . The people in whom the power resided have voluntarily transferred its exercise, and have positively ordained and vested in the Legislature. To allow the Legislature to cast it back on the people would be a subversion of the Constitution, and would change the distribution of power without the action or consent of those who created the Constitution. . . . There is to be noted, however, a real or apparent exception to this rule, or doctrine. However, when correctly viewed, if it is an exception, it is an innovation on the general principle, which serves to emphasize and accentuate the truths of the main doctrine announced. This apparent exception is an innovation always to be found in the Constitution itself, and notably in those provisions of that instrument which relate to local option laws in regard to the sale of intoxicating liquors, and preventing stock running at large. Where this is the case, the referendum is the only rule of final enactment. The people under such exception, by majority, adopt or vitalize a Legislature's act in the territory to be affected. *Unless expressly authorized so to do, these laws can not be so enacted.* State v. Swisher, supra, and cases already cited. . . ."

As before stated, this doctrine has never been questioned by the court until the majority opinion in the instant case was written; and the Farnsworth case has been accepted generally by the profession as meeting the approval of, and being the unanimous opinion of this court.

It will thus be seen that not only the Supreme Court, but this court, has upheld the principle that local option or similar laws can not be submitted to the vote of the people for their sanction and vitality, except in those instances where the people have authorized this to be done in the Constitution itself. The whole history of the law of this State, constitutional and judicial, is a recognition and approval of the doctrine of the Swisher case. In every Constitution created subsequent to that decision the people have reserved in the Constitution the power to vote upon local option laws by positive commands to the Legislature in those special instances in which they desired to exercise the function of legislation. In not one of these Constitutions have the people changed the rule of decision in the Swisher case by enlarging the grant to the Legislature of legislative authority, so as to include the power of delegating its authority to make laws through the vote of the people, except in respect to local option liquor laws, local option stock laws, and a few other enumerated instances. In the earlier Constitutions the Legislature was expressly given the power to suspend laws, not only by its own act, but "under its authority." In the Constitution of 1876, even this right of delegation was taken away from the Legislature, by omitting the last quoted language; as has been frequently held by the court of Civil Appeals, Court of Criminal Appeals, and the Supreme Court of this State. This feature of the case, however, will be gone into at a later point.

Not only has the constitutional history of the State been adverse to the contention of the majority, and has recognized the principle decided in the Swisher case, but the Supreme Court of this State has itself expressly approved that decision. The doctrine announced there was again before the Supreme Court for consideration, in 1866, in the case of San Antonio v. Jones, 28 Texas, 19. The Supreme Court, speaking through Chief Justice Moore, at page 52 of the Report, expressly approves the Swisher case in the following language:

"To sustain this assumption, he relies upon the doctrine laid down and recognized by this court in the case of State v. Swisher, 17 Texas, 441. *The holding of this case is unquestionably sustained by sound reasons, as well as the highest authority, and the question decided by it is regarded by us as correctly and conclusively settled."*

Here is an unqualified approval by the Supreme Court of the doctrine of the Swisher case, as clear as human language could make it. And, when we consider that the statute involved in the Swisher case was, in all essentials, the same as the pool hall statute we are considering, and the only question decided in the Swisher case being the validity of a local option liquor statute, the Supreme Court, in San Antonio v. Jones, must be held to have approved the doctrine which would annul and declare unconstitutional the pool hall statute. The decision in San Antonio v. Jones, on the facts involved, is not in conflict with the holding in the Swisher case because the legislation was of an entirely different

character, and this point was clearly recognized by the court in the later case.

Again, the Supreme Court upheld and recognized the doctrine of the Swisher case in Werner v. Galveston, 72 Texas, 22—a decision rendered in 1888. To show this we quote the language of Mr. Justice Gaines, who spoke for the court:

"*It is a well settled principle that the Legislature can not delegate its authority to make laws by submitting the question of their enactment to a popular vote;* and in State v. Swisher, 17 Texas, 441, this court held an Act of the Legislature which authorized the counties of the State to determine by popular vote whether liquor should be sold in their limits to be unconstitutional."

The holding in the Swisher case was again recognized in Stanfield v. The State, 83 Texas, 317, a decision by the Supreme Court, and in quite a number of other cases; and wherever the question has come before this court and the Supreme Court, both courts have adhered to the rule laid down in that case. Indeed, they could not have done otherwise without destroying the representative form of government as set forth in the Constitution.

But my brethren contend that the Swisher case has been practically overruled in later decisions by the Supreme Court—notably in San Antonio v. Jones, supra; Johnson v. Martin, 75 Texas, 33; Stanfield v. State, 83 Texas, 317, and Graham v. Greenville, 67 Texas, 62. In my opinion, these cases are absolutely irrelevant; and their facts, and the legislation therein considered, serve to so clearly distinguish them from a case involving a legislative Act, authorizing a local option statute to be submitted to the voters, that I shall not undertake to review them seriatim. Suffice it to say, that these decisions are all along a line which is usually conceded to be an exception to the general doctrine that the Legislature is without power to delegate its authority to make or suspend laws. They all include statutes very analogous to the general incorporation statutes for the organization of city governments, which may be accepted or rejected by communities, and are generally recognized as not delegating the legislative power in a just sense. They may all be said, however, to be valid instances of the delegation of legislative authority, and they do not militate against the doctrine here contended for. The Legislature does not, in any of these instances, refuse to exercise its will and judgment upon the expediency and wisdom of the law, but decides those questions for itself; and merely authorizes the people, or their local representatives *to create the instrumentalities or agencies upon which the law can operate.* They are all perhaps proper future contingencies, all relating to the administration of the law—things upon which the Legislature could not be expected understandingly to legislate. Summed up, the Supreme Court, in these decisions, seems merely to recognize the right of the Legislature to provide means for the people to accept the provisions of general laws, already completely enacted by the Legislature, *and relating to matters of administration and municipal*

*control*. In none of the Acts considered in these cases were the voters permitted to say whether a particular business might be lawfully conducted throughout the State, or in any portions of the State, as is directly authorized in the pool hall statute. It might well be conceded, without trenching upon the doctrine of the Swisher case, that the framers of the Constitution, in the very nature of things, must have contemplated that in the vast multitude of details of internal improvement, or of municipal administration, the Legislature could not understandingly deal with the subject in precise rules of conduct laid down in general laws. Of necessity, the exercise of the legislative power in these respects must be committed to local authorities and bodies. In some States this power is conceded, because of the history of such legislation in those jurisdictions, and the traditional exercise of that power. This consideration will at least serve to explain many of the decisions of this character. At all events, the doctrine of these cases should be confined as authority to their peculiar facts; and the holding should not be further extended, because if made to apply to the general submission of local option statutes to the people, the doctrine that legislative power can not be delegated will be wholly subverted, and representative government will disappear in this State.

But not only has the Supreme Court approved the Swisher case, in the cases above referred to, and this court in Ex parte Farnsworth, but the rule has been further recognized by this court in Ex parte Massey, 49 Texas Crim. Rep., 60. In that case, approving the Swisher case, Judge Henderson said: "This principle is reaffirmed in San Antonio v. Jones, 28 Texas, p. 19," and "In the case before us the people had no inherent power to legislate on the subject of local option prior to the adoption of article 16, section 20."

"As early as the case of State v. Swisher, it was held *that the Legislature could not delegate to voters or the people the power to pass laws in the absence of some constitutional provision authorizing this.* And again, it was not until the adoption of article 16, sec. 20, in the Constitution of 1876, *that power was given in the organic law authorizing the delegation of power to the qualified voters to enact local option in the territory therein mentioned.* . . . *The people or the voters of the locality did not have this before.*"

Here was a plain decision by this court that it takes express or implied authority in the Constitution, for the Legislature to submit local option laws to the people for their acceptance or rejection. This case was not even mentioned by the majority in their first opinion, although cited and quoted from in relator's brief. It was not noticed by the majority until relator's counsel, in their motion for rehearing, insisted that the Massey case should be either expressly overruled or followed. It is said in the opinion of the majority on rehearing that the Massey case had already been overruled, in Edmanson v. State, 64 Texas Crim. Rep., 413, and in Fitch v. State, 58 Texas Crim. Rep., 366. Unfortunately for my brethren the decision in neither of the latter cases overruled the

Massey case, insofar as the question of the power of the Legislature to submit local option laws to the people, in the absence of express or implied authority in the Constitution, is concerned. The Edmanson case involved no such question, and there is not a line in the opinion of Judge Harper, speaking for the majority in the Edmanson case, which undertakes to question the correctness of the doctrine recognized in the language of Judge Henderson in Ex parte Massey quoted above. In the Fitch case, not only is there no overruling by Ex parte Massey, but the case is not even mentioned in any of the three opinions written therein. Therefore, we have additional authority of Ex parte Massey in support of the doctrine asserted in the Farnsworth case as the holding of this court. Other cases may be cited from this court; among them, Coombs v. State, 38 Texas Crim. Rep., 648; Jannin v. State, 42 Texas Crim. Rep., 631; Ex parte Powell, 43 Texas Crim. Rep., 391; Fay v. State, 44 Texas Crim. Rep., 381.

There is another fundamental principle of law that has never been gainsaid, so far as I understand, but which was overlooked by the majority opinion—that is, that delegated authority can not be re-delegated by the power to whom the delegation was given. See 6 Vol. Am. & Eng. Ency. of Law, pp. 1021-1022, and note 6 on p. 1021 for cited cases. Perhaps it may be well enough to collate them at this point: People's R. Pass Co. v. Memphis R. Co., 10 Wall. (U. S.), 50, opinion by Judge Clifford; Wayman v. Southward, 10 Wheat. (U. S.), 1; Bank of U. S. v. Halstead, 10 Wheat. (U. S.), 61; Field v. Clark, 143 U. S., 649; Ex parte Well, 48 Cal., 279, 17 Am. Rep., 425; Ex parte Cox, 63 Cal., 21; People v. Nevada, 6 Cal., 143; Rice v. Foster, 4 Harr. (Del.), 479; Georgia R. Co. v. Smith, 70 Ga., 694; Maize v. State, 4 Ind., 342; Meshmcier v. State, 11 Ind., 482; Santo v. State, 2 Iowa, 165, 63 Am. Dec., 487; State v. Geebrick, 5 Iowa, 491; State v. Beneke, 9 Iowa, 203; State v. Weir, 33 Iowa, 134, 11 Am. Rep., 115; Morford v. Unger, 8 Iowa, 82; Auditor v. Holland, 14 Bush (Ky.), 147; State v. Gaster, 45 La. Ann., 636; Farnsworth Co. v. Lishen, 62 Me., 451; Brewer Brick Co. v. Brewer, 62 Mo., 62, 16 Am. Rep., 395; Bradshaw v. Lankford, 73 Md., 428; 25 Am. St. Rep., 602; People v. Collins, 3 Mich., 343; Senate, etc. v. Alpena County, 99 Mich., 117; State v. Simmons, 32 Minn., 540; State v. Young, 29 Minn., 551; Montross v. State, 61 Miss., 429; State v. Wilcox, 45 Mo., 458; State v. Hayes, 61 N. H., 264; State v. Hudson County Ave. Com'rs., 37 N. J. L., 12; Thorne v. Cramer, 15 Barb. (N. Y.), 112; Bradley v. Baxter, 15 Barb. (N. Y.), 122; Barto v. Himrod, 8 N. Y., 483, 59 Am. Dec., 506; People v. Stout, 23 Barb. (N. Y.), 349; State v. New York, 3 Duer (N. Y.), 119; Atlantic Express Co. v. Wilmington, etc., R. Co., 111 N. Car., 463; 32 Am. St. Rep., 805, 55 Am. & Eng. R. Cas., 498; Cincinnati, etc., R. Co. v. Clinton County, 1 Ohio St., 77; Brown v. Fleischner, 4 Oregon, 132; Parker v. Com., 6 Pa. St., 507, 47 Am. Dec., 480; Com. v. McWilliams, 11 Pa. St., 61; Locke's Appeal, 72 Pa. St., 491, 13 Am. Rep., 716; Com. v. Judges, 8 Pa. St., 391; Com. v. Painter, 10 Pa. St. 214; Borough

of West Philadelphia, 5 W. & S. (Pa.), 283; State v. Copeland, 3 R. I., 33; State v. Armstrong, 3 Sneed (Tenn.), 634; State v. Swisher, 17 Texas, 441; Willis v. Owen, 43 Texas, 41; State v. Parker, 26 Vt., 357; 8 Cyc., 841, note 18; L. R. A., vol. 11, p. 582, and note for collation of authorities. Copying from the foot note, this language is found: "It is a maxim of the law that a delegated authority can not be re-delegated." Broom, Legal Maxims, 839; 7 Cent. Rep., 644; 63 Pa., 77; 106 N. C., 258; 33 W. Va., 536. Hence, the power of the Legislature to enact laws can not be re-delegated to the people themselves. But this does not apply with reference to legislative control of municipal corporations. Then cites quite a number of authorities. And even in the latter case, the rule is that powers so delegated to the subordinate local authorities are to be strictly construed, and all reasonable doubt resolved against the grant. This has often been so decided in this State. Branch Crim. Laws, sec. 207, for cases. It is also well settled that a provision of the Constitution designed to restrain and confine legislation within certain definite limits is not subject to the unrestrained legislative will, for if by reason of errors of judgment or for any other cause they exceed the constitutional limit in making appropriations, or in authorizing expenditures or other legislation such as excessive acts are mere nullities. 52 N. Y., 563; 103 U. S., 645; 9 Col., 412; 13 Col. 323-324.

If the Constitution is to be the guiding and superior rule and its provisions to dominate all delegated authority such as the executive, legislative and judicial branches of the government, then it must be clear that the Legislature has not been clothed with authority to re-delegate its authority to the people or to any department of government.

It is not necessary here to notice the question of legislative authority over municipal corporations. It is not involved. I wish to add further in this connection that in all the cases by the Supreme Court and Court of Criminal Appeals it has been expressly held that the Legislature in authorizing cities to proceed to enact ordinances, and granting power to cities in their charters to do this or that thing in reference to their local matters, that such authority must be subordinate to the Constitution and not antagonistic to the general laws of the State. Wherever there is a conflict between the city ordinance or powers granted, or purported to have been granted in city charters, and the general laws of the State, the State law is supreme, and the charter provision or the ordinance, as the case may be, is null and void. There are many of these cases collated in Harris's Ann. Const., on page 208, and ending on page 212. I refer to this to emphasize the fact that my brethren have inadvertently, or through a misunderstanding, used the decisions of this and other courts, upholding power granted in city charters, in sustaining their position in upholding this local option law. The reason for this distinction ought to be and is obvious. It has been written about so much, and in so many States of the Federal Union in addition to our own, that there ought not to be any misapprehension. In other words, my brethren have taken vast numbers of decisions throughout other States from their

proper place, and where correctly deciding the question at issue in them, and have used them to uphold a proposition that those decisions have recognized as not coming within the announced rule.

As sustaining my position that all inherent power resides in the people, and that the Legislature possesses only delegated power, I quote the following language by Chief Justice Brown, in State v. Texas Brewing Co., 106 Texas —, 157 S. W. Rep., 1167:

"All powers of government reside in the people, and the officials of the different departments exercise delegated authority; however, the Legislature can exercise all legislative power not prohibitd by the Constitution. But the section of the Constitution quoted provides a method (a referendum) by which the voters of a given territory may exercise the sovereign power of legislating upon this subject, which places the law adopted by them above legislative authority, as if it had been embraced in the Constitution, and we must so consider the local option law adopted by the voters of Clay County, *for that, like the Constitution, is the exercise of primary sovereignty;* therefore, what is prohibited by the local option law to be done in Clay County, as to sale of intoxicating liquors, can not be authorized by the Legislature to be done there." (Italics mine.)

More important still, Judge Brown here recognizes the fundamental question in this, namely: that in voting upon local option laws the people "exercise the sovereign power of legislation."

The local option laws in Texas have always been held unconstitutional throughout its history unless provided by the Constitution. My brethren seem to have either *confounded* or failed to recognize *the distinction between delegation of power and reserved rights by the Constitution.* The legislative department of this State has been clothed by art. 2, sec. 1, of the Constitution only with legislative authority. That authority is full and ample, unless expressly or by implication curtailed or limited by provisions of the Constitution. Redelegation is not granted. It is useless to discuss those matters. Wherever the Constitution limits the power of any department of the government, that ends the matter. It is not debatable further. The judicial, the legislative and executive departments are creatures of the Constitution, which is itself a creature of our people, and acting under such delegated authority are confined within their scope of authority. The Constitution has not delegated to the law-making department authority to delegate its authority, even to the people themselves. Where the people have decided to exercise their authority directly in making the laws or putting them in operation, they have reserved that right in the Constitution. This is a command by the people to the Legislature, and not a delegation of power to the people by the Legislature. The people reserved this power. The Legislature acts by command of the people in enacting these laws. The people reserve the right to put them in operation. It is a direct, positive negation of the proposition that the Legislature is delegating authority, and is a

complete answer to any idea of delegated authority to the people by the Legislature, and expressly excludes the idea of such delegation.

But where the people have not reserved in the Constitution the right to vote local option laws of a certain character, such as the pool hall statute, the attempt by the Legislature to enforce this principle is a manifest attempt to delegate its own delegated authority. In other words, it is an attempt to confer upon the people the primary right of sovereignty, in the matter of legislation, where they have not reserved that right, and to thereby assume authority by the Legislature to act as from original and inherent power. This calls to mind the memorable admonition of that great English statesman, Edmund Burke, "This change from an immediate state of procuration and delegation to a course of acting as from original power, is the way in which all popular magistracies have been perverted from their purposes." Legislative assumption of original or inherent power is subversive of our government. The people alone have inherent power; the Legislature can act only from delegated authority.

It may be stated, as emphasizing the proposition further, that it is not delegated authority by which the people vote on local option laws, under constitutional provisions; that it has been held by all the courts that where such a law has been put into operation, it remains operative until the people in the same territory vote it out, thus clothing it with the sanctity of constitutional authority itself.

There is another ground upon which the pool hall statute must be held unconstitutional, very much akin to the first proposition discussed in this opinion; that is, that the said statute is repugnant to article 1 of section 28, of the Constitution of 1876, which reads as follows:

"No power of suspending laws in this State shall be exercised except by the Legislature."

In prior Constitutions, the language was as follows:

"No power of suspending laws in this State shall be exercised except by the Legislature, *or its authority.*"

The difference in the language of the present Constitution and that of previous Constitutions is striking, and its significance is unmistakable. To my mind, this change in the fundamental law is conclusive that the people desired to make the Legislature the sole and exclusive repository of the power to suspend laws in this State, except where the people reserved in the Constitution this right of suspending laws themselves directly, by the submission of local option laws. When the people amended this Constitution, by expunging the words "or its authority," it was done with the express purpose of preventing the Legislature from authorizing other departments or functions of the government to suspend State laws. Under former Constitutions, it was expressly permitted to the Legislature to delegate such authority, but for reasons which are still fresh in the minds of the people of this State, and have to do with the gloomy days after the war, the people saw fit to withdraw from the Legislature the power to delegate this important authority.

They did not even reserve to themselves, by the remotest implication, the general power to suspend laws, but conferred an exclusive agency upon the Legislature, revocable only through constitutional amendment.

This court well knows how jealous the people of this State have been in the amendment of their great charter, the Constitution, and it is impossible to assume that they made the change above pointed out except for a deliberate and solemn purpose. The only conceivable purpose or effect of the omission of the words "or its authority," is that the people desired to maintain pure and unalloyed the representative principle in the suspension of their law.

There is an unbroken line of authorities in this State, from Courts of Civil Appeals, the Supreme Court, and the Court of Criminal Appeals, nullifying and striking down acts of the Legislature which have sought to confer upon other agencies the function of suspending State laws. Two notable civil cases are Burton v. Dupree, 19 Texas Civil App., 275, 46 S. W. Rep., 272, and Brown Cracker Co. v. City of Dallas, 104 Texas, 290, 137 S. W. Rep., 342. In the first one cited, the Court of Civil Appeals of this district, in an opinion delivered by Justice Key, held void the charter provisions of the City of Waco, and an ordinance passed thereunder, seeking to confer and exercise the power of licensing and locating houses of prostitution. The ground of the decision was that the Legislature had passed a State law making it a crime to keep, or permit the keeping of houses of prostitution, and that the said charter provisions, and the ordinance passed under it, was an unconstitutional delegation by the Legislature of power to the city authorities to suspend a State law. In Brown Cracker Co. v. City of Dallas, 104 Texas, 190, 137 S. W. Rep., 342, the Supreme Court held void an ordinance of the City of Dallas, passed under charter authority, which sought to legalize and segregate the keeping of disorderly houses. The court based its decision in this case upon the ground that the charter provision authorizing the ordinance gave authority to the city to suspend a State law on the same subject, and that the same was, therefore, in violation of the Constitution. Chief Justice Brown, in his opinion, used the following language:

"In Burton v. Dupree, 19 Texas Civil Appeals, 275, 46 S. W. Rep., 272, Judge Key, in his usual succinct and forcible style, points out the difference between the former and the present provisions of our Constitution, and states clearly the effect such change must have upon this question. Quoting the present section 28 of article 1 of the Constitution, that learned judge says: 'This section restricts the power to suspend laws to the Legislature, and especially prohibits the exercise of such power by any other body. In view of this provision of the Constitution it must be held (whatever may have been the power of the Legislature under former Constitutions) that that body can not now delegate to a municipal corporation or to any one else authority to suspend a statute law of the State. We therefore hold that the provisions of the Penal Code referred to were and are in force within the entire limits of the

City of Waco, as well as elsewhere in the State, and that the lease contract in question, being knowingly made for the purpose of assisting in the violation of a penal law, is contrary to public policy, and not enforcible in the courts.' Since the amendment of the Constitution, the Court of Criminal Appeals has held in accordance with Judge Key's opinion. If it be admitted that the Legislature intended to confer upon the City of Dallas authority to suspend article 361 within the district laid out, that provision of the charter would be void, because in conflict with section 28 of article 1 of our present Constitution. The Legislature had no authority to delegate that power to the city."

To the same effect is the case of McDonald v. Denton, supra, and as stated by Chief Justice Brown in Brown Cracker Co. v. City of Dallas, the Court of Criminal Appeals has also decided this question the same way.

In the case of Ex parte Ogden, 43 Texas Crim. Rep., 531, this court held an ordinance of the City of Beaumont denouncing a punishment for permitting turf exchanges, or places for selling pools on horse races, unconstitutional and void, on the ground that the Legislature had licensed turf exchanges, or the selling of pools on horse races, and that it was beyond the power of the Legislature to delegate authority to a municipal corporation to pass ordinances repealing or suspending the State law. Several cases are cited in the opinion in Ex parte Ogden in support of the holding of this court. I quote this language from the opinion:

"This ordinance simply makes it a violation of law to carry on a turf exchange, or sell pools on horse races in the places mentioned. It being a legitimate business—one legalized by the State—the city could not, even in this indirect manner, inhibit it. It will be noted that the ordinance in question was not one of regulation, but one of inhibition."

In Arroya v. State, 69 S. W. Rep., 503, this court followed the decision in Ex parte Ogden, and the cases cited therein. Arroya was convicted for selling liquor on Sunday in the City of Dallas, in violation of the State law. He filed a plea to the jurisdiction of the County Court, and in support of his said plea, invoked certain provisions of the charter of Dallas, and an ordinance passed thereunder. These charter provisions and ordinance were in conflict with the State law prohibiting the operating of saloons on Sunday. I quote the following from the opinion in that case:

"Thus we are confronted with the proposition, which appellant assumes to be correct, that the Legislature has authority to delegate power to the city council of the City of Dallas, under its special charter, to supersede and set aside any State law which may come within the terms of the delegated authority. Article 1, section 28, of the Constitution provides: 'No power of suspending laws in this State shall be exercised except by the Legislature.' Prior to 1874 this section was as follows: 'No power of suspending laws in this State shall be exercised, except by the Legislature, or its authority.' It may have been the law, or a cor-

rect contention, under prior Constitutions in this State, to assume and assert the proposition here contended for by appellant; but with the change of the Constitution the right of the Legislature to delegate its authority ceased to exist. It is not necessary to go into the history of the reasons for this change in the Constitution, for it is too well known and too fresh to be easily forgotten. Without reviewing the history of the oppressions which grew out of the suspension of laws by reason of such delegation of legislative authority and the declaration of martial law scarcely more than a quarter of a century in the past, it is sufficient to state the fact of such occurrences, and that this change in the organic law swiftly followed, prohibiting such action by the Legislature. The Legislature is but one of the three co-ordinate branches of this government, and has no authority to set aside and override the express limitations upon its power. This matter has been reviewed in our State by our courts of last resort, and the matters fully and freely discussed, the result of those decisions being adverse to appellant's contention. Therefore we deem it unnecessary to enter into a further discussion of the matter. In support of our conclusion, holding that the position assumed by appellant is not the law, we cite the following authorities: Ex parte Ogden, 43 Texas Crim. Rep., 531, 66 S. W. Rep., 100; Burton v. Dupree, 19 Texas Civ. App., 275, 46 S. W. Rep., 272; Ex parte Coombs, 38 Texas Crim. Rep., 648, 44 S. W. Rep., 854; Ex parte Ginnochio, 30 Texas Crim. App., 584, 18 S. W. Rep., 82; Ex parte Sundstrom, 25 Texas Crim. App., 133, 8 S. W. Rep., 207; Bohmy v. State, 21 Texas Crim. App., 597, 2 S. W. Rep., 886; Flood v. State, 19 Texas Crim. App., 584; Angerhoffer v. State, 15 Texas Crim. App., 613, 6 Am. & Eng. Enc. Law, p. 1021-1029, and notes for collated authorities; 8 Cyc., p. 840-1 and notes. Under these authorities, and under the Constitution, the Legislature had no right to delegate its authority in a municipal charter to set aside, vacate, suspend, or repeal the general laws of this State. Any Act of the Legislature which seeks to confer such jurisdiction upon a municipal corporation is violative of the Constitution, and therefore void." See Fay v. State, 44 Texas Crim. Rep., 381; Harris' Ann. Const., 208-212 for cases.

It is impossible to escape the conclusion that, under this line of authorities, the pool hall prohibition statute must fall, as being an unconstitutional delegation to the voters of counties and subdivisions to suspend a State law. Article 7355, section 8, of the Revised Statutes of 1911, legalizes, licenses and taxes the business of keeping and exhibiting billiard and pool tables in every county in this State, and an occupation tax is imposed thereon, to-wit: $20 for every billiard or pool table used for profit. By other provisions of the occupation tax statute, counties, and incorporated cities and towns, are each authorized to impose one-half of this tax upon said occupation.

To permit the voters of any given county or subdivision thereof in this State, by direct vote, and without action by the Legislature itself, to declare such business unlawful, and to revoke the right to pursue same

by a licensed keeper of such tables, who has paid his taxes, or by any one who might choose to pay said occupation taxes and follow said business, is clearly to delegate to the people of such county or subdivision the power to suspend a general law of the State. Under the operation of said statute, the people, by direct vote, may not only suspend the effect and operation of the general law licensing the keeping of pool tables passed by the Legislature, but, indeed, they are permitted to go further, and to repeal the law in that territory for a period of two years at least, and perpetually, if a majority should continue to favor the prohibition. There is absolutely no difference in principle between the questions embraced in the Brown Cracker Co. case, the Arroyo and Ogden cases, and others on that line, and those involved under the pool hall prohibition statute. In those cases the court in effect held that when the Legislature makes certain things illegal by a general law, the Constitution forbids the Legislature to delegate to the people, or any portion thereof, the authority to make the same legal, and thus suspend or repeal such general law. It is a corollary of this proposition, that when the Legislature has declared a thing legal by a general law (for example, the keeping of pool tables for profit), it is beyond the power of the Legislature to confer authority upon the people, or any part thereof, to declare the same illegal by direct vote, and thereby suspend and repeal the general law, in the territory covered by the election.

The absurdity of such a grant of power by the Legislature, in view of the present constitutional provisions, is plain. This might have been done under former Constitutions, as pointed out in Brown Cracker Co. v. Dallas, and other cases, but the people have seen fit in the present Constitution to invest such power in the Legislature alone, which power it can not surrender or delegate, except in special instances named in the Constitution. Therefore, upon this additional ground, must the said statute be declared unconstitutional and void.

The majority, however, strongly undertake to distinguish the above line of decisions from the instant case, and also earnestly contend that the pool hall local option statute does not suspend the State law. By a line of reasoning too occult for me, it is sought to be demonstrated that the pool hall local option statute was passed since the occupation tax statute licensing and taxing the business; and being the last expression of the legislative will, should be allowed to govern and be the law. The majority opinion here indulges in a lengthy dissertation upon the well recognized and generally accepted canon of statutory construction that two laws passed upon the same subject should be harmonized and reconciled if possible; but, if irreconcilable, the later law repeals the former. All this labor might well have been spared, as the rule stated is not questioned. The criticism is directed, not at the doctrine itself, but at the application which is sought to be made of it. There is no doubt that the pool hall local option statute was enacted last by the Legislature, and if expressing its own will and judgment, there could be no question that it would, when in conflict with the former

law, repeal or suspend it. The trouble is, that the Legislature has not done this. It has committed to another agency the function of declaring whether the pool hall local option statute shall take effect and supersede the State licensing and taxing statute. That it has done this is easily demonstrable. Take a given county; for instance, Travis. Until the people shall vote in the prohibition of pool halls, the license and tax statute is in full effect and operation, and legalizes the business. Immediately upon the affirmative vote of the people being had upon the proposition of prohibiting pool halls, the State license or tax law is superseded in that territory. Upon this assumption of fact, what becomes of the State license, or tax law in Travis County? It is not accurate to say that it has been wholly repealed, for the reason that under the provisions of the pool hall local option statute itself, the people of that county, after the expiration of a given time, may again assemble at the polls and vote out the prohibition against pool halls. Thereupon, the State license or tax law automatically goes back into force and effect in that territory. Is it not clear that the State law has been, in the meantime suspended—in a state of "suspended animation" so to speak? No amount of elaboration could make the point clearer; and, the effect of the vote of the people in a given territory, in favor of the prohibition of pool halls, has the direct and immediate effect of suspending the State law. I will close this part of the discussion with a reference to and quotations from a few cases. First, Rathburn v. State, 88 Texas, 281—a Supreme Court decision. In that case a similar question was before the Supreme Court, and Mr. Justice Denman, speaking for the court, said: "The two Acts are essentially antagonistic, and can not both be operative in the same locality at the same time. We are of the opinion that the operation of the former (license law) Act is suspended in any given locality while the latter (local option law) is in force therein."

And as Chief Justice Brown said, in Brown Cracker Co. v. Dallas, supra, in speaking upon a similar question: "The antagonism between the ordinance and the law is as emphatic as that between life and death. It follows logically that both laws can not be in force in that territory at the same time, and it devolves upon this court to determine which is to be maintained."

In Kerr v. Mohr, the Court of Civil Appeals at Dallas, after quoting with approval certain decisions of this court, said, "Under this rule the effect of the putting in force in a given territory of local option, is to suspend previous laws governing liquor selling in such territory. . . . The existing law governing the sale of liquor not having been repealed by the adoption of local option, but only suspended, a repeal of the local option statute would revive the former law."

As early as Robertson v. State, 5 Texas Crim. App., at page 162, this court, speaking of the relative force of liquor tax laws, and the local option law, states: "These laws are not only not in harmony, but are

directly antagonistic, and so utterly repugnant to each other that both can not be of force in the same locality at the same time.

"Local option superseded, in the localities where it was adopted, all other laws on the subject, and expressly, as we have seen, repealed all laws in conflict with it.

"*Rules of construction applicable to different Acts passed at the same session of the Legislature, with reference to their different dates, do not apply here,* for the reason above intimated, that under the Constitution, and the Act passed in pursuance of its provisions, the law could be put in force at any time in the future, whenever the voters of any locality should deem proper."

The same proposition was again announced by this court in the case of Atkinson v. State, 42 Texas Crim. Rep., 229.

My brethren also endeavor to uphold the proposition that there is no suspension of the State license law when the pool hall local option statute is adopted in a given territory; because the former is still in effect and operative in all the other counties and territory of the State. It is submitted that this reasoning is plainly fallacious. Suppose the case, that all the counties of the State should on the same day vote out the pool halls, as may be done under the pool hall statute, what would become of the State law licensing and taxing the business? Would it not be suspended entirely throughout the State? The answer is plain.

Again, my brethren seek to escape the force and effect of the unbroken line of decisions in this State upon the question of suspension of State laws by other agencies than the Legislature. While none of these cases were noticed in the first opinion of the majority, they are discussed in the opinion on motion for rehearing; and the majority did not seek to overrule either Burton v. Dupree, supra, Brown Cracker Co. v. Dallas, supra, Ex parte Ogden, supra, and Arroya v. State, supra. Indeed, they held that these cases were all correctly decided, but denied their application to the instant case. The discussion of these cases by the majority is very unsatisfactory, and the alleged ground of distinction between them is not attempted to be pointed out, and indeed could not well be done. It has occurred to the writer that perhaps the contention might be made that the said line of decisions involved ordinances passed under and pursuant to charter authority, and that the distinction is that there the Legislature did not pass the statute or law which had the effect of suspending a State law; whereas, in the instant case, they did pass the pool hall prohibition statute, and the people were merely given the right to vote for its adoption or rejection. If this is what the majority had in mind, to differentiate the cases, the reasoning is certainly unsound; for, it is clear that the ordinances involved in all those cases, were not passed, nor attempted to be enforced without the previous sanction and authority of the Legislature. In every instance, they had, as the source of their enactment, the express legislative authority, in the charters enacted by the Legislature, according to all the forms and solemnities required by the Constitution. If the duly con-

stituted city governments could not legally pass ordinances, under legislative charter authority, which had the effect of suspending State laws, because involving the delegation of legislative power to suspend laws, then how can it be said that the Legislature can constitutionally vest that authority in the voters of counties or subdivisions? The same logic that would permit the latter to be done, would also allow the former, and all the decisions of the Courts of Civil Appeals, the Supreme Court and of this court, above cited, must have been wrongfully decided.

Nor will it do to say that the distinction is that the Legislature passed the pool hall statute according to the forms prescribed in the Constitution, and that since the law created the authority to cast the vote, it became the act of the Legislature when cast, and not the act of the people casting it. This is the merest sophistry; but if it be true, then it inevitably results that when the city councils of Dallas, Waco and Beaumont passed ordinances which had the effect of suspending State laws, their acts were the acts of the Legislature, because they were done under the express authority granted by the Legislature. The power conferred in said charters was permissive, just as the authority to vote, contained in the pool hall local option statute, is also permissive. If the act of exercising the power in the one instance becomes the act of the Legislature, it follows as the night the day that its exercise in the other is likewise the act of the Legislature.

Another point that relator raises, which to my mind is persuasive that this law is unconstitutional, is predicated upon the legal maxim, *"expressio unius est exclusio alterius."* Under our form of government, the Constitution, section 1, article 3, vests the legislative power of the State in the Legislature. The Legislature alone can exercise the power of making laws, and can not delegate such power to any other body, except in cases where it is clearly authorized by the Constitution. Prior to 1876 the Legislature undertook to refer certain legislation to the people for adoption, and the Supreme Court, in the Swisher case, supra, held the Act unconstitutional on that ground. After the adoption of the Constitution of 1876, we find several instances in which the framers provided instances in which the Legislature might refer specific legislation to the people for final adoption. Notably, section 20, article 16—the provision relating to local option liquor laws. Section 23, article 16, relating to stock laws. Section 10, article 11, relating to independent school districts; section 7, article 11, authorizing coast counties to issue bonds to construct sea walls, etc. Since the adoption of the Constitution of 1876, section 52, article 3 has been amended, authorizing the issuance of bonds for the construction of roads and other purposes to be voted on by the people. Therefore, it is manifest, by these special provisions authorizing the adoption of laws by a vote of the people, that had the people intended the Legislature to exercise the power of referring such legislation to them for adoption, they would have so provided in the Constitution; and having failed to do so, the maxim above referred to becomes the proper rule of construction. The very fact that the people

have provided, in special instances, for a vote on certain laws, excludes the idea that they intended that a vote could be taken on any law other than those specifically named.

My brethren have stoutly maintained that the Legislature has the power to enact laws on any subject where not prohibited by the Constitution. This rule is correct in a general sense, but it is not true in this particular case, because there is a limitation in the Constitution against the referring of such a law as the pool hall statute to the people for adoption. This limitation arises out of the rule under discussion that having expressed the character of laws which can be referred to the people, excludes the idea that any other character of laws can be so referred. This constitutional limitation has been outlined by this court in numerous cases, notably that of Holley v. State, 14 Texas Crim. App., 505, construing the local option amendment, section 20, article 16, which provides that the Legislature should enact a law whereby the qualified voters of any county, etc., by a majority vote may determine . . . whether the sale of intoxicating liquors shall be prohibited within the prescribed limits. Subsequently, the Legislature enacted laws prohibiting not only the sale, but the giving away of intoxicating liquor in communities where the sale thereof had been prohibited by a vote of the people. This court held such a statute unconstitutional. It will be noted that the statutory provision only authorized the enactment of laws prohibiting the *sale* of liquor. It was strongly urged that inasmuch as all power to make laws is inherent in the people, and vested in the legislative branch of the government, that independently of any constitutional provision expressly prohibiting it, the Legislature could, by virtue of this inherent power, legally prohibit the sale or giving away of liquors throughout, or in any locality of the State. That the Constitution being silent upon the subject of *giving away,* left that matter still to be acted upon by the Legislature as they saw fit. This court held that inasmuch as the Constitution expressly prohibited the sale where the law was adopted, the framers did not intend to prohibit a gift, otherwise they would have expressed the intention in plain and unequivocal language. That the Constitution in not attempting to provide for the passage of a law prohibiting a gift of intoxicating liquor, this express provision prohibiting a sale, operated as a limitation upon the power of the Legislature to enact such a law. In other words, it was an application of the maxim, "the expression of the one is the exclusion of the other." This court held that the Legislature is without power, inherent or otherwise, to pass, subject to ratification by the people, an independent *general* law prohibiting the gift of intoxicating liquors, as long as section 20, article 16, remains in the Constitution. Mr. Cooley states the rule to be, that when the Constitution defines the circumstances under which a right may be exercised, or a penalty imposed, the specification is an implied prohibition against legislative inference to add to the condition or to extend the penalty to other cases. The Constitution having defined the circumstances under which the

people may permit the sale of intoxicating liquor under legislative enact-ment, and the Legislature having attempted to extend the prohibition to a gift, they exceeded their authority, and this court said: "The Constitution having specified the bounds within which they were to act, it was a direct assumption and assertion of unwarranted power to go beyond these bounds." Thus it will be seen that by the decisions of this court, the expression of the manner and method by which intoxicating liquors might be prohibited in certain localities, became a limitation upon the power of the Legislature to enact a law extending its scope. Upon the same logic, when the people framed the Constitution and specified particular laws which the Legislature might enact and refer to the people for adoption, the expression of these instances became a limitation upon the power of the Legislature to enact any such law on any other subjects not specifically authorized in the Constitution.

There is still another question which it occurs to me it might be important to discuss. Some of the cases outside of Texas hold that the maxim that the Legislature can not delegate its power do not apply to matters of police, and that seems to be the view of the majority here. This opinion seems to be founded upon the idea that it involves a delegation of legislative authority for the Legislature to submit to localities for their sanction, laws which involve the police power; but that such delegation is not within the inhibition of the general rule. In other words, they seem to consider that delegations of police power are exceptions to the maxim. It is not to be denied that this doctrine finds support in some of the decisions elsewhere; but under our Constitution, and the history of the subject in Texas, this is not true in this State.

I think the Supreme Court of Tennessee has aptly met this argument in the following language in Wright v. Cunningham. At page 298, 91 S. W. Rep., the court said:

"Such difference can not be found in the fact, as many cases in other jurisdictions hold that the powers conferred upon such subordinate divisions of the State are police powers. The nature of the powers conferred may have, and no doubt does have, a controlling influence in determining whether they shall be delegated at all, but can have no influence in fixing the method under which they shall be devolved. *Whether a legislative act embrace police powers or other powers, rights or duties, at last it is but a legislative act, and to be valid must square with the Constitution in all respects.* All legislative acts, regardless of their contents, or their relative importance, must pass the same ordeal; no one, from a constitutional standpoint, being entitled to more consideration, or subjected to more stringent limitations, or to be treated with more leniency than another. *All must be measured with the same measure.*"

I fail to see how I can add anything to this forcible and, to my mind, unanswerable statement by the Tennessee court. I will merely observe that our Constitution makes absolutely no difference as to the delegation of legislative authority to make or suspend laws, between police measures and other kinds of legislation. Wherever the people have desired the

right of referendum for the enactment of police measures, they have carefully provided for the same in the Constitution itself, and have not left the broad field of such delegation open generally to the Legislature.

Not only is it a vicious doctrine, in principle, that the Legislature, in the absence of constitutional permission may refer all laws relating to the police power directly to the people for their sanction, but the consequences of such a doctrine are so great, and the violation of the representative principle so plain, that I deem it proper to point them out. If such a proposition be sound, then all the multitude of subjects embraced within the scope of police power may be submitted to the people for them to pass directly upon, before they become laws. This court well knows that the tendency of modern judicial opinion is to broaden the scope of the police power, so as to embrace not only all subjects bearing a proper relation to public morals, public health, the public safety and the good order of peace and society; also all matters having an appropriate relation to the public welfare. Within these bounds, the power is practically illimitable, and is elastic enough to keep pace with the needs of the times and of civilized society. Indeed, so wide are the boundaries of this power, that the mind can not conceive the practical subjects of its exercise. Perhaps it is no exaggeration to say that half the legislation of this day falls properly under the police power. Therefore, if the Legislature can constitutionally refer such subjects to the people, not only of cities, but of counties, for their determination as to whether statutes relating thereto shall become laws, we will presently see the Legislature evading its responsibility as to the wisdom and expediency of the greater part of our laws, and putting their enactment up to the people. All laws relating to gambling, in all its forms, the carrying and sale of pistols, and other deadly weapons, the licensing, regulation, or prohibition of bawdy houses, the Sunday laws, the regulation or prohibition of all occupations and pursuits which might be said to be evil in their tendencies, laws relating to public health, and to public safety, such as quarantine regulations, and the storing and transportation of explosives, laws relating to the hours of labor, and the working of women and children in mines and factories—these and hundreds of others of which the mind can scarcely conceive, may all be referred to the people and become laws or not laws, as the people may by direct vote determine. To my mind the statement of such a proposition is its own answer under a Constitution like ours. The history of our Constitution, and of legislation in this State, does not warrant this innovation upon the system of enacting laws in Texas.

That the above far-reaching consequences may flow from the decision of the majority, seems to be conceded by them, but they say that the wisdom of the law is for the Legislature, and not for us. I can not but believe that my brethren have not seriously contemplated the possible results of their opinion, for if it be the law, then our Constitution, its history, its provisions, and the decisions of the courts construing it, have all been rendered in vain. Their decision will constitute a com-

plete revolution of the representative form of government ordained by the Constitution. We will have this year before the people of Texas, an amendment to the Constitution, submitting the referendum clause for insertion in that instrument. If the majority be right, the adoption of the amendment would be the merest folly, because they say the Legislature has that authority now to be exercised in its wisdom, as an inherent power. The adoption of the referendum would be utterly useless, for they say the referendum has already come in Texas. The inclusion of that power in the Constitution, to be exercised by the people, would be like the numerous clauses heretofore placed in the Constitution with reference to the local option laws—a mere work of supererogation.

If the Legislature should not exercise the broad and virtually unlimited power which my brethren say they possess, it is only because they will see fit not to exercise it. If they should do so, the discord and chaos that would follow would be marvelous. The confusion of tongues at the tower of Babel would be harmonious symphony compared with the wholesale confusion that would result from the holding of the majority opinion. In the light of the constitutional history of this State, the course of judicial decisions, and the interpretation recently placed upon our Constitution by our Legislature in proposing the referendum amendment, I propose that the majority shall take the responsibility, before the bar and bench of Texas, for this radical and dangerous innovation upon our form of government. This opinion, unavailing as it must be to alter the opinion of the majority of this court, and perhaps already too long, is my earnest and solemn protest against it.

It will be observed that I have not undertaken to follow my brethren in the discussion of opinions of courts of other States, or the state of the law upon these questions in other States and jurisdictions. My reason for not doing so is simply this: those cases and the law announced in the various States are in hopeless confusion and conflict, and can not enable us to determine the meaning of our own Constitution. We ought and should decide these questions under our own Constitution, law and decisions. We are familiar with our constitutional provisions and their history, as well as the judicial and legislative interpretation placed on that instrument in our own State, and we should pass upon its meaning. The Supreme Court of Tennessee, speaking through Justice Neil, in Wright v. Cunningham, supra, tersely states my idea as follows:

"Suffice it to say that questions of State constitutional law are, in a very important sense, peculiarly local; and in every jurisdiction the court of last resort must decide for itself the meaning of the Constitution under which it exists, and the validity of laws enacted by the legislative branch of the government. The decisions of other courts, construing constitutions containing similar provisions, can be, at most, only suggestive and advisory."

In justice to myself I place of record my high sense of appreciation

of the able assistance in their exhaustive brief, written argument, and by oral presentation of the great issues involved in this case, as well as personal aid rendered me in the preparation of this opinion by Messrs. Lightfoot, Brady & Robertson, counsel for applicant. This assistance has been invaluable. Not only has this assistance been of great service to me as judge, but I am persuaded their earnest work in behalf of the great principle of representative constitutional government entitles them to recognition in the jurisprudence of our country. To that end it affords me pleasure to place this of record and in history.

I can not agree with my brethren in the conclusion they have reached, and, therefore, dissent.